# EXHIBIT 2

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RODGER MAY, an individual,

        Plaintiff,

    v.

MK SALVAGE VENTURE LLC; a Washington limited liability company; BEAR ENTERPRISES LLC, a Washington limited liability company, and PETER KUTTEL, an individual.

        Defendants.

CAUSE NO: 19-2-10613-1

SUMMONS TO PETER KUTTEL

TO: PETER KUTTEL

    A lawsuit has been started against you in the above-entitled Court by Plaintiff Rodger May. Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

    In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the Plaintiff within 20 days after the service of this Summons if served upon you within the state of Washington, or 60 days if served upon you outside the state of Washington, including the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are

SUMMONS - 1

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

entitled to notice before a default judgment may be entered.

You may demand Plaintiff file this lawsuit with the Court.  If you do so, the demand must be in writing and must be served upon the undersigned attorney for the Plaintiff at the address below stated.  Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the state of Washington.

DATED this 17th day of April, 2019.


ZORETIC LAW, PLLC

By_____
Michael T. Zoretic, WSBA #21221
215 Pateros Mall / PO Box 427
Pateros, WA 98846
mike@zoreticlaw.com
(206) 465-8109
**Attorney for Plaintiff**

SUMMONS - 2

**ZORETIC LAW**
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

L. Meler Declaration Exh. 2 p. 2

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RODGER MAY, an individual, | CAUSE NO: 19-2-10613-1 |
| Plaintiff, | PLAINTIFF'S COMPLAINT |
| v. | |
| MK SALVAGE VENTURE LLC; a Washington limited liability company; BEAR ENTERPRISES LLC, a Washington limited liability company, and PETER KUTTEL, an individual. | |
| Defendants. | |

Plaintiff Rodger May, by and through his undersigned attorney, alleges for his Complaint the following:

**PARTIES**

1.    Plaintiff Rodger May ("May") is an individual residing in King County, Washington.

2.    Defendant MK Salvage Venture LLC ("MK Salvage") is a Washington limited liability company headquartered and doing business in King County, Washington.

3.    Defendant Bear Enterprises LLC ("Bear Enterprises") is a Washington limited liability company headquartered and doing business in King County, Washington.

COMPLAINT - 1

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

4.      Defendant Peter Kuttel ("Kuttel") is an individual residing in King County, Washington.  Katella is, and at all times has been, a managing member of Bear Enterprises, along with his company PJK Investments, Inc.

## JURISDICTION/VENUE

5.      Jurisdiction and venue lie in King County, Washington under RCW 4.12.010 and 4.12.020 because the personal property at issue and the causes of action herein arose in King County, Washington.

## BACKGROUND

6.      Ocean Mar (Washington) Inc. ("Ocean Mar") is a foreign corporation, organized and formed under the laws of Delaware, and licensed to conduct business in the State of Washington.

7.      For many years, Ocean Mar and its related entities have engaged in efforts to salvage the remains of the "S/S Islander," a commercial vessel that sunk off the coast of Alaska in 1901, alleged to contain gold and other treasure.

8.      Ocean Mar obtained the legal rights to salvage the S/S Islander through the court proceedings in Alaska federal district court entitled *Yukon Recovery, L.L.C. v. Certain Abandoned Property, in rem, Defendant; Ocean Mar, Inc.*, 3:96-cv-0270 (Consol.), culminating in a 2012 court-approved salvage plan.

9.      Ocean Mar sought outside investors to fund the salvage operations.

10.     May and Bear Enterprises formed MK Salvage as a Washington Limited Liability Company on March 28, 2012 to serve as the entity by which they would participate with Ocean Mar in salvaging the SS Islander.

11.     Rodger May and Bear Enterprises are, and at all times have been, the only members of MK Salvage, each owning fifty percent of the entity.

COMPLAINT - 2

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

12.     On March 28, 2012, MK Salvage entered into a contract with Ocean Mar entitled, "Financing and Salvage Management Agreement" (herein, "the OMI Contract") governing MK Salvage's participation and funding of Ocean Mar's salvage operations relating to the SS Islander.  A true and correct copy of said agreement is attached hereto as **Exhibit A** and incorporated as if fully stated herein.

13.     Under the OMI Contract, MK Salvage agreed to and was to manage the salvage operations, in cooperation with Ocean Mar.  MK Salvage was also to provide funding for operations in the amount of $5 million ("the Initial Investment"), subject to certain reimbursement rights as stated therein.

14.     Section 3 of the OMI Contract created a contractual security interest in favor of MK Salvage over certain described intellectual property of Ocean Mar to be generated during the future salvage operations funded by MK Salvage, "including, without limitation, computer data, photographs, videos, imaging, readings, logs, journals, media discs, etc." (herein, the "Intellectual Property.")

15.     Section 3 further provides that the Intellectual Property was to be downloaded to a media disc on a daily basis and held by the Cairncross & Hempelmann, P.S. law firm ("C&H") in escrow pursuant to the terms of an "escrow agreement" until the security lien is satisfied or otherwise released following MK Salvage's receipt of its initial investment, plus twelve percent interest.

16.     The parties to the OMI Contract conducted salvage operations on the SS Islander from 2012 through 2014.

17.     The salvage operations resulted in the recovery of some gold bullion, but of less value than MK Salvage's Initial Investment.

COMPLAINT - 3

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

18.     Intellectual property (as described in Section 3 of the OMI Contract) was generated during these salvage operations, which included computer data, photographs, videos, imaging, maps, surveys, readings, logs, journals, media discs, etc.   Upon information and belief, the Intellectual Property was downloaded onto a computer disc and provided to C&H.

19.     The Intellectual Property, including the original source material and the computer discs, were later stored by the parties' agreement at MK Salvage's then primary headquarters, located at Bear Enterprises' office at 4209 21st Avenue W., Suite 400, Seattle, Washington.

20.     May and Bear Enterprises decided to cease their joint involvement in the salvage operations.   In 2016, May and Bear Enterprises began winding up the affairs of MK Salvage, including a distribution of its known assets.

21.     In November 2016, May and Bear Enterprises executed a "Record of Action of MK Salvage Venture LLC to Distribute All Known Assets" attached hereto as **Exhibit B** and incorporated as if fully set forth herein.

22.     Section 1 of the Record of Action purports to identify the only known assets of the company. Section 1(a) identifies the following: "The right to conduct further salvage efforts relating to the sunken S/S ISLANDER, as contained in the Financing and Salvage Management Agreement between MK Salvage Venture LLC and Ocean Mar, Inc. (the OMI contract") dated March 29, 2012, as amended..."

23.     Section 2 a. the Record of Action provides that the above-described rights will be distributed to May.

24.     Section 3 provides that MK Salvage "hereby assigns all of its right title and interest in the salvage contract rights described in 1(a) and 1(c), above, to Rodger D. May..."

COMPLAINT - 4

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

25.   The only known assets to be distributed to Bear Enterprises were a marine vessel (Section 1(d)), one-half of the reimbursement rights contained in Section 2 of the OMI Contract (Section 1(c)), and a share of the company's bank account funds (Section 1(f)).

26.   Bear Enterprises retained no rights in any future salvage operations, the Intellectual Property or the OMI Contract, other than reimbursement rights.

27.   On or about the same date, May and Bear Enterprises executed a document entitled "Assignment of MK Salvage Venture LLC Assets," a true and correct copy of which is attached hereto as **Exhibit C** and incorporated as if fully set forth herein.   The Assignment provides in Section 1 that MK Salvage "hereby unconditionally sells, assigns, and transfers to Rodger D. May 100% of any and all rights, title, and interest it has in the following:   "The right to conduct further salvage efforts relating to the sunken S/S ISLANDER, as contained in the [OMI Contract]...."

28.   Section 2 of the Assignment further provides that MK Salvage:

> unconditionally sells assigns, and transfers, equally to Rodger D. May and Bear Enterprises, LLC, the right to reimbursement of MK Salvage Venture LLC's Recovery Investment (as defined in the OMI contract) under ¶2(a)(i).  Any rights to other salvage recovery proceeds under ¶2 of the OMI contract are hereby assigned to Rodger D. May solely.

29.   May and Bear Enterprises also executed a document entitled "Record of Action of MK Salvage Venture LLC to Dissolve Company," a true and correct copy of which is attached hereto as **Exhibit D** and incorporated as if fully set forth herein.   Section 2 of that document states:

> MK Salvage Venture LLC has, in accordance with RCW 25.15.305, distributed all of the assets it holds to its two members, equally, except that it will retain its sole checking account at Wells Fargo Ban, Account No. 3139238962, in order to pay the Company's final expenses, such as income tax, insurance and tax preparation fees and costs. The division of the Company assets is as set forth in a separate Record of Action of this same date.  After the 2016 taxes and preparation fees and any other

COMPLAINT - 5

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

routine expenses have been paid, any amount remaining in that bank account will be distributed to its two members equally

30.     MK Salvage thereafter ceased operations, held no assets, and conducted no business other than the winding down of the company through payment of expenses, as provided in Exhibit D.

31.     Despite having no interest in the Intellectual Property or the security interest therein, Bear Enterprises and/or its member Peter Kuttel have wrongfully, improperly and without authorization continued to retain possession and/or control of the Intellectual Property at Bear Enterprises' office.

32.     The Intellectual Property is important, if not critical, to Ocean Mar and May continued salvage operations as it contains important confidential and proprietary information relating to the location of the S/S Islander and its surroundings.

33.     May has demanded that Bear Enterprises and/or Kuttel relinquish possession of the Intellectual Property so that May (in conjunction with Ocean Mar) could utilize it in performance of additional salvage efforts.

34.     Bear Enterprises and Kuttel have refused to relinquish the IP to May or any other entity associated with May.

35.     Defendants' continued possession and failure to convey and/or return the Intellectual Property to May is a wrongful deprivation of May's property and contractual rights.

36.     Defendants' failure to relinquish the Intellectual Property has wrongfully interfered with May's ability to move forward with the salvage operations, jeopardizing the recovery of what could be millions of dollars worth of additional gold bullion.

///

///

COMPLAINT - 6

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

**FIRST CAUSE OF ACTION:**

**DECLARATORY RELIEF**
**(against MK Salvage and Bear Enterprises)**

37.     Plaintiff seeks declaratory relief under Washington's Uniform Declaratory Judgment Act, RCW 7.43 to determine the parties' respective rights to use and possession of the Intellectual Property and further enjoining Defendants' continued wrongful possession of the same.

38.     The Court has authority to enter a declaratory judgment.  RCW 7.24.010; CR 57.  Declaratory judgment is appropriate where:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statue, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020.

39.     Declaratory judgment is appropriate here to determine the Plaintiff and/or Defendants' property rights and interests under the agreements described herein.

40.     Plaintiff May alleges that he, as the sole assignee of MK Salvage's "rights, title and interest" in the salvage rights under the OMI Contract, and therefore is the legal and/or equitable owner of MK Salvage's lien rights in the Intellectual Property.  In addition, Plaintiff May alleges that he has the contractual, equitable and legal right as assignee of MK Salvage's interests to have unfettered access to the Intellectual Property for purposes of conducting the future salvage operations.

41.     Plaintiff alleges further that Defendants' have no contractual, equitable, possessory or statutory right to retain the Intellectual Property and their continued possession thereof will cause damage and/or otherwise violate Plaintiff's rights and interests therein.

COMPLAINT - 7

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

42.     Plaintiff therefore requests the Court declare that Defendants' continued possession and/or refusal to convey the Intellectual Property to Plaintiff is in violation of Plaintiff's contractual rights in the agreements described above, and any other such declaratory relief deemed appropriate under the circumstances.

**SECOND CAUSE OF ACTION:**

**INJUNCTIVE RELIEF**
**(against all Defendants)**

43.     The Court has authority to order injunctive relief to enforce a declaratory judgment.  RCW 7.24.80; RCW 7.24.190; CR 65.  RCW 7.24.080 provides:  "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." RCW 7.24.080.

44.     RCW 7.24.190 provides:

> The Court, in its discretion and upon such conditions and with or without such bond or other security as it deems necessary and proper. . .may restrain all parties involved in order to secure the benefits and preserve and perfect the rights of all parties to the court proceedings.

45.     Injunctive relief is appropriate here to enforce Plaintiff's rights under the agreements and to protect the Plaintiff's property rights and interests in the Intellectual Property.

46.     Plaintiff's efforts and ability to conduct additional salvage operations are being hampered by Defendants' failure to return the Intellectual Property and injunctive relief is appropriate and/or necessary to prevent further harm suffered by Plaintiff.

47.     Defendants have no legal or equitable basis for retaining possession of the Intellectual Property.

48.     Plaintiff therefore requests that the Court issue a temporary and/or permanent mandatory injunction requiring Defendants to convey the Intellectual Property to Plaintiff.

COMPLAINT - 8

**ZORETIC LAW**
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

**THIRD CAUSE OF ACTION:**

**BREACH OF CONTRACT**
**(against Bear Enterprises)**

49.     Defendant Bear Enterprises' conduct, including its failure to convey the Intellectual Property as described herein, constitutes a continuing breach of the parties' agreements identified herein.

50.     Defendant Bear Enterprises' continued possession, control and/or use of the Intellectual Property is in violation of Plaintiff's rights under the OMI Contract, Exhibit A, and/or MK Salvage corporate resolutions contained in Exhibits B-D.

51.     Plaintiff has been damaged by Defendants failure to comply with the attached agreements, including but not limited to, not having the use and benefit of the Intellectual Property for purposes of additional salvage operations.

52.     Defendants' continued deprivation of Plaintiff's possession and use of the Intellectual Property has caused, and is continuing to cause, Plaintiff lost opportunity, including the right to salvage the remaining gold that may be located in the S/S Islander hull.

**FOURTH CAUSE OF ACTION:**

**CONVERSION**
**(against all Defendants)**

53.     Defendants have wrongfully interfered with Plaintiff's possessory rights in the Intellectual Property.

54.     Defendants have refused to return the Intellectual Property to Plaintiff following the execution of the corporate resolutions (Exhibits B-D), without justification and/or authority.

55.     Plaintiff has suffered, and is continuing to suffer, loss of use and/or opportunity as a result of Defendant's interference.

COMPLAINT - 9

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

56.     Plaintiff is entitled to an award of damages for any and all injuries caused by said interference, including the inconvenience and lost use of Intellectual Property.

### FIFTH CAUSE OF ACTION

### DERIVATIVE CLAIM ON BEHALF OF MK SALVAGE
### (against Bear Enterprises)

57.     In the event the Court determines that the Intellectual Property was an unassigned asset of MK Salvage, Plaintiff May asserts the following derivative claim on behalf of the company.

58.     Plaintiff May is a member of MK Salvage.

59.     To the extent the rights to MK Salvage's security interest and/or lien in the Intellectual Property are an unassigned asset of the Company, MK Salvage has continuing rights thereto.

60.     If MK Salvage is the owner of the security interest in the Intellectual Property, it is required to allow Ocean Mar and/or May to utilize the Intellectual Property in future salvage operations.

61.     In such event, Plaintiff May hereby files a derivative action in MK Salvage's name against Bear Enterprises seeking return of the Intellectual Property, through May as its assignee and/or custodial agent so that it may be utilized by Ocean Mar and May in the future salvage operations.

62.     A demand of the other member, Bear Enterprises, to return the Intellectual Property has been made, and any demand for Bear Enterprises to cause the company to bring an action against Bear Enterprises would be futile.

### PRAYER FOR RELIEF

Plaintiff requests entry of judgment as follows:

COMPLAINT - 10

ZORETIC LAW
P.O. Box 427
Pateros, WA 98846
Tel. 206.465.8109

1      1.      Declaring and affirming the validity of Plaintiff's rights and obligations

2   under the agreements attached hereto, as well as any other contractual agreements

3   established between the parties;

4      2.      Declaring that Plaintiff has the right to immediate possession, use and

5   enjoyment of the Intellectual Property;

6      3.      Granting injunctive relief requiring Defendants to comply with their

7   contractual obligations, to release the Intellectual Property to Plaintiff, and/or other

    injunctive relief as the Court deems appropriate:

8      4.      Awarding all general and special damages suffered by Plaintiff as a result of

9   Defendants' breaches of the agreements attached hereto, as well as any other contractual

10  agreements, and/or other tortious conduct.

11     5.      Awarding Plaintiff all costs and expenses of litigation, including all statutory

12  and/or reasonable attorney's fees, as allowed under the agreements and/or Washington

13  law, including RCW 19.108.040.

14     6.      For such other and further relief as the Court deems just and equitable.

    DATED this 17th day of April, 2019.

15

16                          ZORETIC LAW

17

18

19  By_____
                         Michael T. Zoretic, WSBA #21221
20                       mike@zoreticlaw.com (email)
                         Attorney for Plaintiff

21

22

23

24  COMPLAINT - 11

                                              ZORETIC LAW
                                              P.O. Box 427
                                              Pateros, WA 98846
                                              Tel. 206.465.8109

# EXHIBIT A

# Financing and Salvage Management Agreement

This Financing and Salvage Management Agreement ("**Agreement**"), dated as of March 28, 2012, is by and between Ocean Mar (Washington) Inc. ("**Ocean Mar**") and MK Salvage Venture, LLC ("**MK**").

## RECITALS

A.     Pursuant to the express terms of the August 28, 1998 Order from the United States District Court for the District of Alaska (the "**Court**"), affirmed on appeal, Ocean Mar has been designated as the entity responsible for the operational and preservation aspects of the effort to salvage the SS Islander's wreckage and all gold and artifacts related thereto (the "**Salvage**"). Ocean Mar represents and warrants that Ocean Mar, Inc. referenced in the court documents and Ocean Mar (Washington), Inc. are one and the same entities and Ocean Mar (Washington), Inc. has full right and authority to enter into and perform under this Agreement.

B.     Ocean Mar anticipates the Salvage operation will commence as early as May 15, 2012.

C.     Ocean Mar wishes to engage MK to finance and manage the Salvage. In its role as the financier and manager of the Salvage, MK will contract with and pay the entities and individuals that will assist with the Salvage. MK will have operational control of the Salvage subject to the limitations and conditions herein.

D.     MK is prepared to provide up to $5,000,000 (the "**Recovery Investment**") to fully finance the Salvage on the terms set forth herein.

## AGREEMENT

The parties agree as follows:

1.     **Financing of the Salvage**. MK agrees to:

(a)     Identify vendors and other subcontractors (collectively, "**Salvage Vendors**") needed to accomplish the Salvage efforts;

(b)     Negotiate and enter into contracts with Salvage Vendors and pay amounts owed to such Salvage Vendors;

(c)     Engage Theodore P. Jaynes, the principal of Ocean Mar ("**Ted Jaynes**") as a consultant pursuant to that certain Consulting Agreement attached hereto as Exhibit A, pursuant to which MK will pay Ted Jaynes (i) $15,000.00 upon execution of this Agreement, and (ii) $5,000 per month commencing on the later of May 15, 2012 or the date that Ted Jaynes, MK's

{01884280.DOC;9 }

owners, employees, or Salvage Vendors first depart for Juneau, Alaska to begin the Salvage operations, provided further that the payment obligations under the Consulting Agreement cannot be terminated by MK for any reason unless MK terminates this Agreement; and

(d)     Engage Tetra Tech, Inc. as a subcontractor in connection with the Salvage operations.

As the manager of the Salvage, MK has the right to hire and fire any subcontractor.

2.     **Consideration for Funding**. In consideration for MK's covenants and obligations set forth herein, Ocean Mar agrees to make the following payments:

(a)     Subject to approval of the Recovery Plan (defined below) by the Court, Ocean Mar will pay to MK: (i) an amount equal to the Recovery Investment, or (ii) an amount equal to seven times the Recovery Investment but if and only if the value of the Salvage recovery proceeds is at least 15 times the amount of the Recovery Investment. Notwithstanding anything herein to the contrary, the total payment to MK under this Section 2(a) will not exceed $30,000,000. Examples of the possible distribution of proceeds pursuant to this Section 2(a) are set forth at Exhibit B hereto.

(b)     After payment of Ocean Mar's payment obligations to the Salvage Association in accordance with the Salvage Agreement (NO CURE NO PAY) "ISLANDER" (the "**SA Agreement**"), payment to the State of Alaska pursuant to the settlement with the State (the "**State Agreement**") [1], and after payment of the amounts required to be paid under Section 2(a) hereof, then fifty percent (50%) of any remaining Salvage recovery proceeds will be paid to MK, up to a maximum payment of $100 million. All liens and claims against the Salvage recovery proceeds (other than those related to or arising out of contracts to which MK is a party), if any, will be paid out of Ocean Mar's share of the Salvage recovery proceeds.

(c)     In the event the value of the Salvage recovery proceeds exceeds $1 billion then MK will be paid an additional fifty percent (50%) of the recovery proceeds from $1 billion to $1.2 billion, up to a maximum payment of $100 million.

(d)     The Recovery Plan that Ocean Mar will submit to the State and to SA for approval before filing with the Court will assume that their recoveries are net, not gross, i.e. subordinate to MK's Recovery Investment. However, MK acknowledges and agrees that the payments (and the order of payments) to be made by Ocean Mar hereunder are subject to approval of the Court. Notwithstanding anything in this Section 2 to the contrary, in the event that the Court does not approve the subordination of the Salvage Association's and the State of Alaska's claims to the recovery proceeds to MK's Recovery Investment (including the 15X multiple under this Section 2(a)), then payment of MK's Recovery Investment shall be subordinate to the claims of the Salvage Association and the State of Alaska.

---

[1] The SA Agreement requires payment of 25% of the recovery of insured gold. The State Agreement requires payment of 10% of the recovery of personal gold (as defined therein).

{01884280 DOC;9 }

3.      **Lien on Intellectual Property**. Ocean Mar hereby grants MK a security interest in and to all of Ocean Mar's intellectual property, including, without limitation, computer data, photographs, videos, imaging, readings, logs, journals, media discs, etc. that is related to the salvage of the SS Islander and that is obtained or created during any of Ocean Mar's salvage recovery efforts funded by MK after the date hereof (the "**Intellectual Property**"). For sake of clarity, the Intellectual Property will not include any intellectual property created by Ocean Mar prior to the date of this Agreement. MK's security interest shall be evidenced by a lien on the Intellectual Property (the "**Lien**"). The Intellectual Property will be downloaded to a media disc on a daily basis and held by Cairncross & Hempelmann, P.S. in escrow pursuant to the terms of an escrow agreement ("**Escrow Agreement**") until the Lien is satisfied or otherwise released. The Lien will be released to Ocean Mar (or its successor in interest) when MK receives payment pursuant to this Agreement that is equal to or greater than the Recovery Investment plus interest at 12% per annum.  Except for payments received by Ocean Mar with respect to revenues generated from the Media Rights (described in Section 5 below) which are not subject to MK's security interest or Lien, in no event shall Ocean Mar be entitled to revenues from the use of the Intellectual Property until MK receives payment in full.

4.      **Salvage and Recovery Operations**.

        (a)      MK will consult in good faith with its team of experts, which will include Ted Jaynes, before making operational decisions with regard to the Salvage; however, MK will have final say on all operational matters related to the Salvage.

        (b)      Ocean Mar, Inc. will be represented (by either Ted Jaynes personally or Jed Powell on his behalf) on the Salvage vessels at all times to ensure that the Salvage is conducted in full compliance with the Court approved Recovery Plan to be prepared by Cairncross & Hempelmann, P.S. (the "**Recovery Plan**"). Ocean Mar and MK will work with Cairncross & Hempelmann, P.S. attorneys to assemble a team of qualified experts to handle the logging, securing, storage, transportation, conversion, and ultimate distribution of gold and artifacts recovered during the Salvage. The parties agree and understand that the handling of all gold and artifacts from the point of recovery to the point of ultimate distribution will be in accordance with the State Agreement, the SA Agreement, and the requirements of the Court.

        (c)      MK reserves the exclusive right to remove at any time any persons from the vessels located at the site of the Salvage operations in Juneau, Alaska if (i) such persons become continuously argumentative, combative, disruptive, or in any way consistently challenge the authority of Rodger May while Mr. May conducts onsite Salvage operations, or (ii) such persons' behavior causes or poses a serious risk to the safety of the crew and/or technology used at the site of the Salvage operations.  Notwithstanding anything in this Agreement to the contrary, if Ocean Mar's on-board representative is removed from any vessel located at the site of the Salvage operations, MK agrees that Jed Powell, in consultation with Ted Jaynes, has the unfettered right to appoint any other person, including Jed Powell, to participate in the onsite Salvage operations and be on board such vessel or vessels in order to protect the interests of Ocean Mar, and MK agrees that such designated person cannot be removed from the vessels without Jed Powell's written approval.

{01884280.DOC;9 }

(d)     MK understands that persons and/or entities may have pirated some of the gold from the SS Islander in violation of contracts and/or NDAs with Ocean Mar. MK has the right to fund any action or lawsuit against such persons or entities in order to recover any stolen gold and artifacts. All funds expended by MK in connection with the action or lawsuit against such persons or entities shall be considered part of the Recovery Investment and subject to Section 2(a).

5.     **Media Rights and Revenues**.

(a)     MK and Ocean Mar want to contract with any and all available media entities the best available contracts for the exploitation of the media rights attending this adventure. These media rights shall be limited to the following: television, video, and feature and/or documentary film rights related to the Salvage operation ("**Media Rights**"). Notwithstanding the provisions of paragraph 3 herein, MK will have exclusive rights to negotiate and enter into media contracts for the licensing of the Media Rights on best terms available subject to final approval by Ocean Mar. Ocean Mar will not contact any of the media entities during the period in which MK is negotiating these contracts.

(b)     All revenues generated from the licensing of the Media Rights ("**Licensing Revenues**") will be distributed as follows:

(i)     thirty-three percent (33.3%) of all Licensing Revenues will be paid to Ted Jaynes (Ted Jaynes agrees to pay the first $400,000 of such Licensing Revenues to Cairncross & Hempelmann, P.S. for past due legal fees);

(ii)     thirty-three percent (33.3%) of all Licensing Revenues will be paid to MK; and,

(iii)     thirty-three percent (33.3%) of all Licensing Revenues will be held in escrow by Cairncross & Hempelmann, P.S. pursuant to the terms of the Escrow Agreement. Any remaining escrowed Licensing Revenues shall only be released: (i) to an entity or person if MK and Ocean Mar jointly direct Cairncross & Hempelmann, P.S. to distribute such funds to that entity or person, or (ii) in equal amounts to MK and Ocean Mar one year from the date that the Licensing Revenues are first received by MK and Ocean Mar.

(c)     In the event this Agreement is terminated, MK shall be entitled to all Media Rights and its share of the Licensing Revenues for those media contracts entered into during the term of this Agreement. For media contracts that were in the process of negotiation but not finalized during the term of this Agreement, and for all Media Rights obtained after the termination of this Agreement in which MK and/or its principals, employees and agents were a part of the subject matter thereof, MK shall receive twenty-five percent (25%) of all Licensing Revenues therefrom.

6.    **Confidentiality**.

      (a) MK acknowledges and agrees that all information, knowledge or data concerning or relating to the Salvage to which MK has been or shall become privy by reason of this Agreement, discussions or negotiations relating to this Agreement, or financing of the Salvage, whether orally or in writing, that has not already been publicly disclosed by Ocean Mar shall be considered confidential information of Ocean Mar (the "**Confidential Information**"). MK agrees that, except with the prior written permission of Ocean Mar, it shall at all times keep confidential and shall not use, divulge, furnish, publish or otherwise disclose or make accessible to anyone, or permit the use by others, any of the Confidential Information. To the extent any press release is to be published regarding the Salvage, MK and Ocean Mar will jointly agree on the content of such press release.

      (b) Ocean Mar acknowledges and agrees that all the Intellectual Property will be kept confidential until such time as the Lien is released to Ocean Mar or its assigns. Ocean Mar also agrees to keep confidential the identity of MK and its owners and MK's contractual relationships with third parties; provided, however, that Ocean Mar may disclose MK's involvement in the Salvage to Ocean Mar's investors so long as MK's identity is not revealed to such investors.

7.    **Non-Competition**.    During the term of this Agreement neither party and/or its affiliates and assigns shall directly or indirectly, engage in, nor directly or indirectly finance, own any interest in, be employed by, or work for on a contractual basis any business or business entity which engages or intends or attempts to engage in, activities related to the Salvage.  And for a period of sixty (60) months after the termination of this Agreement or the financing relationship memorialized herein, regardless of the reason either may end, MK and its affiliates and assigns shall not, directly or indirectly, engage in, nor directly or indirectly finance, own any interest in, be employed by, or work for on a contractual basis any business or business entity which engages or intends or attempts to engage in, activities related to the Salvage, unless MK is engaged in the Salvage after foreclosing on the Lien. Ocean Mar and MK agree that an example of a company that would fall within the scope of this non-compete includes, without limitation, Yukon Recovery, Inc., a company that was previously involved in a dispute with Ocean Mar related to the rights to perform the Salvage. This dispute eventually led to litigation and was resolved solely in favor of Ocean Mar pursuant to the August 28, 1998 Order from Court.

      MK acknowledges that the terms of this Agreement, including this Section 7, are reasonably necessary to protect Ocean Mar's legitimate business interests and are reasonably limited in scope and duration.

8.    **Injunctive Relief**.    MK and Ocean Mar mutually acknowledge that any violation by MK or Ocean Mar of any provision of this Agreement may cause the offended party (be it Ocean Mar or MK) substantial and irreparable injury. Therefore, MK and Ocean Mar agree that, upon a violation or threatened violation of any such Section, the offended party will be entitled, in addition to any other remedies it may have under this Agreement or at law, to seek injunctive and other equitable relief to prevent or curtail such violation.

9.    **Indemnification**. From and after the execution date of this Agreement, Ocean Mar shall indemnify, defend, save and hold harmless MK from and against any damage, liability, loss,

{01884280.DOC;9 }

expense or injury (including, without limitation, reasonable attorneys' fees and costs and expenses incident to any claim, suit action or proceeding) suffered by MK with respect to claims against Ocean Mar, Ted Jaynes, or their affiliates and assigns whether known or unknown, that exist as of the date of this Agreement. Ocean Mar's indemnification obligations hereunder only extend to claims for direct damages, not consequential, special, indirect, incidental, or punitive damages.

10.     **Insurance Requirements.** MK shall at all times during the term of this Agreement provide and maintain in effect those insurance policies and minimum limits of coverage as designated below, and any other insurance required by law in any jurisdiction where MK or its affiliates, contractors and assigns perform services related to this Agreement, with insurance companies authorized to do business in the jurisdiction where the work is to be performed and will comply with all those requirements as stated below. 50% of the cost of this insurance will be reimbursed to MK from Ocean Mar's recovery, if any, from the salvage.  MK does not get a multiplier on insurance premiums paid.

        (a)     Workers' Compensation insurance shall be provided by MK as required by any applicable law or regulation and, in accordance with the provisions of the laws of the nation, state, territory or province having jurisdiction over MK's employees. If any such applicable jurisdiction has a social scheme to provide insurance or benefits to injured workers, MK must be in full compliance with all laws thereof;

        (b)     MK shall carry Commercial General Liability insurance covering all operations by or on behalf of MK or its affiliates and contractors arising out of or connected with this Agreement including coverage for bodily injury, death, property damage, personal and advertising injury, products liability, completed operations liability, claims by one insured against another insured, with limits of not less than $1,000,000 per occurrence. The "your work" exclusion in such insurance shall except damage caused by work done by a company of the insured. Such insurance must be on an "occurrence" basis and not "claims-made" basis;

        (c)     MK shall carry Hull, Machinery, Equipment, and Dinghy insurance that covers the operation of its boats on domestic and international waters, including coverage for damage to the hull, or other parts of the boat and any injuries to the crew or other passengers on the boat, including persons that carry out diving services from the boat, with limits not less than $1,000,000 per occurrence;

        (d)     MK shall carry Umbrella Liability and/or Excess Liability insurance for not less than $10,000,000 per occurrence in excess of the limits provided by MK's Commercial General Liability insurance policy. The Umbrella/Excess policy shall not contain an exclusion for contractual liability;

        (e)     Ocean Mar, its subsidiaries and affiliates, and their respective officers, directors, employees and agents shall be named as Additional Insureds for the insurance policies required to be maintained by MK under this Agreement. The policies shall provide that MK's insurance shall be primary to and noncontributory with any and all other insurance maintained or otherwise

{01884280.DOC;9 }

afforded to MK, its subsidiaries and affiliates, and their respective officers, directors, employees and agents;

      (f)    Certificates of Insurance or other formalized evidence of the coverages required above shall be furnished by MK to Cairncross & Hempelmann, P.S. when this Agreement is signed, or within a reasonable time thereafter, and within a reasonable time after such coverage is renewed or replaced. If reasonably requested by Ocean Mar, a certified copy of the actual policies with appropriate endorsements shall be provided to Ocean Mar. Any acceptance of insurance certificates by Ocean Mar shall not limit or relieve MK of the duties and responsibilities with respect to maintaining insurance assumed by it under this Agreement; and

      (g)    If MK does not comply with the insurance requirements of this Section 10, Ocean Mar may, at its option, provide insurance coverage to protect Ocean Mar and MK and charge MK for the cost of such insurance.

11.    **Termination**. This Agreement may be terminated by MK at any time, without cause upon written notice to Ocean Mar. In the event of termination, MK's funding obligations shall cease, including obligations for payments under the Consulting Contract or for payments to any other consultants and subcontractors, and its rights to receive future proceeds from the salvage operations contemplated in this Agreement shall terminate, with the exception of its rights to a return of the Recovery Investment and future License Revenues as set forth in Sections 2, 3 and 5 herein which shall survive the term of this Agreement. In the event of termination of this Agreement for any reason, Sections 6 – 13 and 15-17 shall also survive termination of this Agreement.

12.    **Notices**. All notices required or permitted to be given under this Agreement (collectively, including any Requests, **"Notices"**) shall be in writing. Notices may be served by certified or registered mail, postage paid with return receipt requested; by private courier, prepaid; or personally. Mailed notices shall be deemed delivered five days after mailing, properly addressed. Couriered notices shall be deemed delivered when delivered as addressed, or if the addressee refuses delivery, when presented for delivery notwithstanding such refusal. Personal delivery shall be effective when accomplished. Unless a party changes its address by giving notice to the other party as provided herein, notices shall be delivered to the parties at the following addresses:

      (a)    Notice to Ocean Mar: By notice to:

            Ted Jaynes
            c/o Cairncross & Hempelmann, P.S.
            524 Second Ave., Suite 500
            Seattle, WA 98104
            Attn.: Jed Powell

      (b)    Notice to MK: By notice to:

            MK Salvage Venture, LLC
            4209 21st Avenue W.
            Suite 400

{01884280.DOC;9 }

Seattle, WA  98199
Attn:  Peter Kuttel and Rodger D. May

13.     **Independent Counsel.** MK acknowledges that this Agreement has been prepared on behalf of Ocean Mar by Cairncross & Hempelmann, P.S. and that MK has elected to retain Vi Jean Reno as its independent counsel in connection with the negotiation of this Agreement. Cairncross & Hempelmann, P.S. is not representing, nor acting on behalf of MK with regard to the formation of this Agreement.

14.     **Transfer Prohibited**.  Neither this Agreement nor any of the rights of the parties hereto may be transferred or assigned by either party without the other party's prior written consent; provided, however, MK's rights under this Agreement may be assigned to any entity in which Rodger May and/or Peter Kuttel (i) own at least 51% of such entity's voting power, or (ii) Rodger May and/or Peter Kuttel are the CEOs/Presidents, managers, managing members or general partners.  MK represents, warrants and covenants that Rodger May, Peter Kuttel and/or entities controlled by each of them, currently own and will continue to own at least 51% of the voting power of MK and that Rodger May and Peter Kuttel will continuously serve as the co-Operating Managers of MK with full authority and power to act for, and represent the interests of MK.

15.     **Choice of Law; Venue**. This Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Washington, without giving effect to principles and provisions thereof relating to conflict or choice of laws, irrespective of the fact that any one of the parties is now or may hereafter become a resident of a different state. Venue for any action under this Agreement shall lie in the state and federal courts located in King County, Washington.  In the event of a dispute between the parties concerning this Agreement or the subject matter thereof, the most prevailing party shall be entitled to recovery of its reasonable attorney's fees and costs incurred, regardless of whether suit was instituted or on appeal.

16.     **Waiver; Amendment**. This Agreement, and the terms and conditions hereof, may only be amended, terminated, or waived with the written consent of all of the parties hereto.

17.     **Miscellaneous**. This Agreement: (a) sets forth the entire agreement of Ocean Mar and MK with respect to the subject matter hereof; and (b) shall inure to the benefit of, and be binding upon, Ocean Mar, MK, and their respective heirs, legal representatives, successors, and assignees.

**[Remainder of Page Intentionally Left Blank; Signature Page Follows]**

{01884280.DOC;9 }

Accepted and agreed to as of the date first written above.

**OCEAN MAR (WASHINGTON) INC.**

By: _____

Name:  Theodore Jaynes

Title:  President

Date:  3-29-12

**MK SALVAGE VENTURE, LLC**

By: _____

Name: _____

Title: _____

Date: _____


By: _____

Name: _____

Title: _____

Date: _____

{01884280.DOC;9 }

Accepted and agreed to as of the date first written above.

**OCEAN MAR (WASHINGTON) INC.**

By:

Name:   Theodore Jaynes

Title:   President

Date:   3-29-12

**MK SALVAGE VENTURE, LLC**

By:

Name:   Rodger May

Title:

Date:   3-29-12

By:

Name:

Title:

Date:

{01884280.DOC;9 }

## Exhibit A

## Ted Jaynes Consulting Agreement

## CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this **"Agreement"**), dated as of March 28, 2012, is by and between MK Salvage Venture, LLC, a Washington limited liability company (the **"Company"**) and Theodore P. Jaynes (**"Consultant"**). All terms not otherwise defined herein shall have the meaning ascribed thereto in that certain Financing and Salvage Management Agreement (the **"Financing Agreement"**) by and between the Company and Consultant and dated of even date herewith.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.     **Engagement of Consultant**.  The Company hereby engages Consultant to provide services to the Company, and Consultant hereby accepts such engagement, on the terms and conditions set forth herein.

2.     **Description of Services**.  Throughout the term of this Agreement, Consultant shall provide services (the **"Services"**) to the Company on a variety of matters relating to the salvage and recovery of the S.S. Islander, as further described in the Financing Agreement (the "Salvage").  Subject to the rights of Ocean Mar and/or Consultant set forth in the Financing Agreement, including, without limitation, Section 4 of the Financing Agreement, the type and manner of services provided by Consultant shall be at the sole and absolute discretion of Company. Nothing herein shall limit Consultant's right to engage in activities outside the scope of this Agreement, provided that such activities are not inconsistent with the terms of this Agreement.

3.     **Compensation**.  Company will pay Consultant as follows:

(a)     A onetime payment of $15,000 upon the date this Agreement is executed by the parties as more particularly set forth in the Financing Agreement.

(b)     A flat fee of $5,000 per month as compensation for the Services beginning on May 1, 2012, or the date upon which Mr. Jaynes, Company's owners or employees, or any persons or entities hired by Company to assist with the Salvage operations first depart for Juneau, Alaska in connection with the Salvage.  Payment for such monthly fee shall be due within 10 days of the end of each completed month and shall be pro-rated with respect to any partially completed months. Company will not pay Consultant for his expenses incurred in connection with the Services.  Company's obligation to pay this monthly fee shall cease at such time as this Agreement terminates in accordance with the provisions of paragraph 4 herein.,

4.    **Term and Termination**.

(a)    This Agreement shall commence on March 28, 2012, and shall continue until the earlier of the date that (i) Company ceases to be involved with the Salvage through termination of the Financing Agreement or (ii) Ted Jaynes receives Salvage recovery proceeds as a result of the recovery of gold during the Salvage.

(b)    Upon the termination or expiration of this Agreement, the Company shall pay Consultant any fees owed prior to the date of termination.

5.    **Duty of Full Disclosure**.  Upon execution of this Agreement Consultant represents and warrants that he shall have a duty of full disclosure to the Company with respect to all aspects of the Salvage.  The parties acknowledge that Consultant's knowledge of the Salvage operations is critical to the continuance of the Salvage and it is agreed that Consultant's duty of full disclosure is for the purpose of continuing operations in the event of Consultant's death or incapacity.  The Company represents and warrants that all information received from Consultant shall not be deemed Intellectual Property (as defined in the Financing Agreement) of Company and shall be subject to the Confidentiality provisions and Non-Competition provisions of the Financing Agreement.

6.    **Independent Contractor Status**.  The parties agree that Consultant is an independent contractor and not an employee of the Company.  Consultant is not entitled to worker's compensation, retirement, insurance or other benefits provided to employees of the Company, nor will the Company make deductions from the advisory fees for taxes, insurance, bonds or any other subscription of any kind, which shall be Consultant' sole responsibility.  Consultant acknowledges that he is responsible for the payment of all personal taxes, fees and other assessments arising from providing the Services and shall otherwise comply with applicable laws, ordinances, regulations and other government requirements related thereto.  The parties acknowledge and agree that neither party has the power or authority to act for, represent or bind the other in any manner, except as so authorized in writing by the Company or Consultant.  This Agreement is expressly not intended to create a joint venture, partnership, agency, employment or other relationship.

7.    **Miscellaneous**.

(a)    If court or alternative dispute resolution proceedings are required to enforce any provision of this Agreement, the substantially prevailing party shall be entitled to an award of reasonable costs and expenses of litigation or dispute resolution proceeding and any appeal, including reasonable attorneys' fees.

(b)    If any provision of this Agreement is held to be unenforceable as written, it shall be enforced to the maximum extent allowed by applicable law.

(c)    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement will be assigned by any party without the prior written consent of the other party.

L. Meier Declaration Exh. 2 p. 27

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns.

(d)     This Agreement constitutes the entire agreement between the Company and Consultant, represents the final and complete expression of the parties' agreement on the subject matter hereof, and merges all prior and contemporaneous communications with respect to the subject matter hereof.  This Agreement may not be modified except by a subsequent written agreement signed by both parties.

(e)     This Agreement shall be governed by and construed in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Washington.  Venue for any action under this Agreement shall lie in the state and federal courts located in King County, Washington.

(f)     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and together will constitute one and the same instrument.  A facsimile signature or an emailed signature shall have the same force and effect as an original signature.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

L. Meier Declaration Exh. 2 p. 28

## SIGNATURE PAGE TO CONSULTING AGREEMENT

The Company and Consultant have executed this Agreement as of the date first above written.

**COMPANY:**      **MK SALVAGE VENTURE, LLC**

By: _____
Name: _____
Title: _____
Date: _____


By: _____
Name: _____
Title: _____
Date: _____


**CONSULTANT:**      **THEODORE P. JAYNES**

**Exhibit B**

**Recovery Distribution Examples**

**Attached.**

{01884280.DOC;9 }

| Investment Amount | $ 5,000,000.00 | | |
|---|---|---|---|

| Recovery Amount (15X) | | | |
|---|---|---|---|
| 15 | | $ | 75,000,000.00 |

| Less: | | | |
|---|---|---|---|
| Salvage Association | | | 18,750,000.00 |
| Rodger 7X or $30M Cap | | $ | 30,000,000.00 |
| Distributable Proceeds | | $ | 26,250,000.00 |

| Rodger May | | $ | 13,125,000.00 |
|---|---|---|---|
| Ocean Mar | | $ | 13,125,000.00 |

Table below works up to $4,285,714

| Investment Amount | $ 1,500,000.00 | | |
|---|---|---|---|

| Recovery Amount (15X) | | | |
|---|---|---|---|
| 15 | | $ | 22,500,000.00 |

| Less: | | | |
|---|---|---|---|
| Salvage Association | | | 5,625,000.00 |
| Rodger 7X or $30M Cap | | $ | 10,500,000.00 |
| Distributable Proceeds | | $ | 6,375,000.00 |

| Rodger May | | $ | 3,187,500.00 |
|---|---|---|---|
| Ocean Mar | | $ | 3,187,500.00 |

# EXHIBIT B

## Record of Action of MK Salvage Venture LLC
### to Distribute All Known Assets

COME NOW all of the members of MK Salvage Venture LLC, (the "Company"), a Washington limited liability company consisting of Rodger D. May and Bear Enterprises LLC, and they unanimously resolve that:

1.  The only known assets of MK Salvage Venture LLC are:

    a.  The right to conduct further salvage efforts relating to the sunken S/S ISLANDER, as contained in the Financing and Salvage Management Agreement between MK Salvage Venture LLC and Ocean Mar, Inc. (the "OMI contract") dated March 29, 2012, as amended;

    b.  The right to reimbursement of MK Salvage Venture LLC's Recovery Investment (as defined in the OMI contract) under Paragraph 2(a)(i) of the OMI contract;

    c.  Any rights to other salvage recovery proceeds under Paragraph 2 of the OMI contract, except as set forth in the immediately preceding paragraph;

    d.  The protector vessel AU1, USCG Official No. 1199468, and appurtenances;

    e.  Ownership units of Gold Leaf Productions, LLC, an Alaskan limited liability company, Entity No. 1001005; and

    f.  Wells Fargo Bank Account No. 3139238962.

2.  The assets of MK Salvage Venture LLC will be distributed as follows:

    a.  To Rodger D. May, all assets as described in ¶ 1(a), ¶ 1(c), and ¶ 1(e) above, at no cost to him;

    b.  To Bear Enterprises LLC, the asset described in ¶ 1(d) above.  Bear Enterprises LLC will pay $180,000 to Rodger D. May for this asset;

    c.  To Rodger D. May and Bear Enterprises LLC equally, the asset described in ¶ 1(b) above; and

    d.  The bank account identified in ¶ 1(f) above will be distributed in accordance with ¶ 7 below.

Page 1

3.     By this resolution, MK Salvage Venture LLC hereby assigns all of its right, title, and interest in the salvage contract rights described in ¶ 1(a) and ¶ 1(c), above to Rodger D. May, as well as the ownership units of Gold Leaf Productions, LLC to Rodger D. May.  As of the date of execution of this Record of Action, and except as provided herein, Bear Enterprises LLC shall have no further right to gold recovered by Rodger D. May in any salvage efforts initiated by Rodger D. May.

4.     By this resolution, MK Salvage Venture LLC hereby assigns all of its right, title and interest in the reimbursement rights set forth in ¶ 1(b) above, to its two members equally: Rodger D. May and Bear Enterprises LLC.

5.     Peter J. Kuttel, as a representative of MK Salvage Venture LLC, shall execute a Coast Guard form of Bill of Sale (USCG Form 1340) in substantially the form attached, so as to transfer title of the vessel AU1 from MK Salvage Venture LLC to Bear Enterprises LLC.

6.     The members of MK Salvage Venture LLC shall execute a Release of Hold Harmless in substantially the form attached.

7.     MK Salvage Venture LLC has one bank account, located at Wells Fargo Bank, and this account is used to pay routine expenses.  This account shall remain in place to cover any corporate tax liabilities and tax preparation expenses, plus vessel expenses until title has been transferred.  After all expenses have been paid, any remaining account balance shall be distributed to the Company members equally.

8.     MK Salvage Venture LLC agrees that any applicable tax losses to which the Company is entitled shall be taken in tax year 2015.

9.     The Company's regular certified public accountants will be directed to prepare final tax returns for 2015 and 2016.

10.     Counsel for Rodger D. May and Peter J. Kuttel shall execute a Stipulation and Order of Dismissal, with prejudice and without costs to either party, of the lawsuit filed in King County Superior Court, Cause No. 16-2-00620-5 SEA, Kuttel v. May.

11.     After the distribution of all assets and the payment of all expenses as set forth above, MK Salvage Venture LLC authorizes Daniel Leston, Chief Financial Officer of the Company, to deliver to the Washington Secretary of State and to the State of Alaska Department of Commerce, a Certificate of Dissolution.

*[ signature page follows ]*

Page 2

Dated this _____ day of August, 2016.

RODGER D. MAY

_____
Rodger D. May, Member
MK Salvage Venture LLC

BEAR ENTERPRISES LLC

_____
Bear Enterprises LLC, Member
MK Salvage Venture LLC
By: _____ PETER KUTTEL _____
Its: _____ MEMBER _____

[SIGNATURE PAGE TO RECORD OF ACTION OF MK SALVAGE VENTURE LLC]

# EXHIBIT C

### Assignment of MK Salvage Venture LLC Assets

COME NOW all of the members of MK Salvage Venture LLC, (the "Company"), a Washington limited liability company consisting of Rodger D. May and Bear Enterprises LLC, and they unanimously resolve that:

1. MK Salvage Venture LLC, pursuant to the Record of Action to Distribute Assets dated August _____, 2016, hereby unconditionally sells, assigns, and transfers to Rodger D. May 100% of any and all rights, title, and interest it has in the following:

- The right to conduct further salvage efforts relating to the sunken S/S ISLANDER, as contained in the Financing and Salvage Management Agreement between MK Salvage Venture LLC and Ocean Mar, Inc. (the "OMI contract") dated March 29, 2012, as amended;

- Ownership units of Gold Leaf Productions, LLC, an Alaskan limited liability company, Entity No. 1001005;

2. MK Salvage Venture LLC, pursuant to the Record of Action to Distribute Assets dated August _____, 2016, hereby unconditionally sells, assigns and transfers, equally, to Rodger D. May and Bear Enterprises LLC, the right to reimbursement of MK Salvage Venture LLC's Recovery Investment (as defined in the OMI contract) under ¶ 2(a)(i). Any rights to other salvage recovery proceeds under ¶ 2 of the OMI contract are hereby assigned to Rodger D. May solely.

3. This assignment is effective as of August __, 2016.

[ *signature page follows* ]

Page 1

Case 2:21-cv-01002-JCC   Document 18-2   Filed 09/09/21   Page 39 of 49

Dated this _____ day of August, 2016.

RODGER D. MAY

BEAR ENTERPRISES LLC

_____
Rodger D. May, Member
MK Salvage Venture LLC

_____
Bear Enterprises LLC, Member
MK Salvage Venture LLC

By: _____PETER KUTTEL_____

Its: _____MEMBER._____

[SIGNATURE PAGE TO ASSIGNMENT OF MK SALVAGE VENTURE LLC]

L. Meier Declaration Exh. 2 p. 38

# EXHIBIT D

**Record of Action of MK Salvage Venture LLC**
**to Dissolve Company**

COME NOW all of the members of MK Salvage Venture LLC, (the "Company"), a Washington limited liability company consisting of Rodger D. May and Bear Enterprises LLC, and they unanimously resolve that:

1.      MK Salvage Venture LLC is in the process of winding up all of its affairs and activities in accordance with RCW 25.15.297.

2.      MK Salvage Venture LLC has, in accordance with RCW 25.15.305, distributed all of the assets it holds to its two members, equally, except that it will retain its sole checking account at Wells Fargo Bank, Account No. 3139238962, in order to pay the Company's final expenses, such as income tax, insurance and tax preparation fees and costs.  The division of Company assets is as set forth in a separate Record of Action of this same date.  After the 2016 taxes and preparation fees and any other routine expenses have been paid, any amount remaining in that bank account will be distributed to its two members equally.

3.      Other than as set forth in ¶ 2 above, MK Salvage Venture LLC knows of no claims against the Company.

4.      After the distribution of all assets and the payment of final expenses as set forth in ¶ 2 above, MK Pacific LLC authorizes Daniel Leston, Chief Financial Officer of the Company, to deliver to the Washington Secretary of State a Certificate of Dissolution.

Dated this _____ day of August, 2016.

**RODGER D. MAY**                                          **BEAR ENTERPRISES LLC**

_____                      _____
Rodger D. May, Member                               Bear Enterprises LLC, Member
MK Salvage Venture LLC                             MK Salvage Venture LLC

                                                                    By: _____

                                                                    Its: _____

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| Rodger May | NO. 19-2-10613-1  SEA |
| Plaintiff(s) | ORDER SETTING CIVIL CASE SCHEDULE |
| vs | |
| | ASSIGNED JUDGE: SCHUBERT, Dept. 40 |
| AND  PETER  KUTTEL  MK  SALVAGE VENTURE LLC, BEAR ENTERPRISES LLC | |
| | FILED DATE: 04/18/2019 |
| Defendant(s) | TRIAL DATE:04/13/2020 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (**Schedule**) on the Defendant(s) along with the **Summons and Complaint/Petition.**  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion.  The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this **Schedule**. In order to comply with the **Schedule**, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

      **You are required to give a copy of these documents to all parties in this case.**

1

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule.  The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

1

L. Meier Declaration Exh. 2 p. 42

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|   | Case Filed and Schedule Issued. | 04/18/2019 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | 09/26/2019 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 09/26/2019 |
|   | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 10/10/2019 |
|   | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 11/11/2019 |
|   | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 12/23/2019 |
|   | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 01/06/2020 |
|   | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 01/06/2020 |
|   | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 02/24/2020 |
|   | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 03/16/2020 |
|   | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 03/23/2020 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 03/23/2020 |
|   | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 03/30/2020 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 04/06/2020 |
|   | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 04/06/2020 |
|   | Trial Date [*See KCLCR 40*]. | 04/13/2020 |

The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:     04/18/2019

_____

PRESIDING JUDGE

1

### IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

#### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

#### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

#### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

### MOTIONS PROCEDURES

#### A. Noting of Motions

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule

1

7 governs these motions, which include discovery motions. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:** Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time. However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule. In addition, discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B. Original Documents/Working Copies/ Filing of Documents: All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application. Pre-registration to accept e-service is required. E-Service generates a record of service document that can be e-filed. Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. **Do not file the original of the proposed order with the Clerk of the Court**. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order. The court may distribute orders electronically. Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the Ex Parte and Probate Department.** Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count

1

includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

PRESIDING JUDGE

1

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| Rodger May | No. 19-2-10613-1  SEA |
| | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| vs | |
| | (CICS) |
| MK Salvage Venture LLC, Bear Enterprises LLC | |

### CAUSE OF ACTION

INJ - Injunction

### AREA OF DESIGNATION

SEA            Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.