# EXHIBIT 5



**Policy Number:**   OMH 3133724 05

**Insured Name:**   BEAR ENTERPRISES, LLC

**Policy Term:**   Prior Year Policy Term

I am an employee of Great American Insurance Company authorized to certify that the attached forms and endorsements constitute the true and correct copy of the policy identified above.

**Signature:**

**Printed Name:**   Molly Dearth

**Business Unit:**   Ocean Marine Division

**Date:**   09/07/2021

| Document Filename | Description | Folder | Folder Sub Type | MOD | Document Created Date | Added By |
|---|---|---|---|---|---|---|
| 20160928-OMT-Policy-OMH313372405-34.pdf | | Policy | POLICY | 05 | 09/28/2016 | P8 File Net |

# ADDITIONAL PROCESSING INSTRUCTIONS

**Policy No.**      OMH 3133724 05

MAIL TO:   SERVCO INS SERVICES WA LLC

1100 DEXTER AVE N STE 220

SEATTLE, WA  98109 - 3598

**SEND PRODUCER OUTPUT TO  0624702**

**ADDITIONAL OUTPUT SUMMARY**

(      )  Standard Insured                    (      )  Full Agency

(      )  Standard Agency                    (      )  Full Company

(      )  Standard Company               (      )  Full Copy of Original

(      )  Standard Copy of Original

**SPECIAL INSTRUCTIONS:**

L. Meier Decl., Ex. 5, p. 2



Your Great American Insurance Policy

GreatAmericanInsuranceGroup.com

©2014 Great American Insurance Company is an equal opportunity provider. 301 E. Fourth Street, Cincinnati, OH 45202. 07900CM-A (4/14)

There are over **3,000** property and casualty insurance companies in the United States.

Only **50** are included on the Ward's 50 List for safety, consistency and performance.

Only **5** have been rated "A" or better by A.M. Best for over 100 years.

Only **2** are on both lists.

Great American Insurance Company is **1** of the two.

The numbers tell the story.

**GREATAMERICAN**®
INSURANCE GROUP

GreatAmericanInsuranceGroup.com

Source: Ward Group®, 2014 Ward's 50 Property and Casualty Companies, and A.M. Best®. Great American Insurance Company is rated "A+"(Superior) by A.M. Best® as of February 21, 2014. 07900CM-A (4/14)

L. Meier Decl., Ex. 5, p. 4



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2244 (Ed. 01 01)**

**Policy No.**      OMH 3133724 05
**Renewal Of**    OMH 3133724 04

# OCEAN MARINE POLICY DECLARATIONS PAGE

| | |
|---|---|
| **NAMED INSURED AND ADDRESS:**<br>BEAR ENTERPRISES, LLC<br>4209 21ST AVENUE WEST<br>SUITE 400<br>SEATTLE, WA  98199 | **POLICY PERIOD:**<br>12:01 A.M. Standard Time at the address<br>of the Named Insured shown at left.<br>From     09/28/2016   To     09/28/2017 |
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **AGENT'S NAME AND ADDRESS:**<br>SERVCO INS SERVICES WA LLC<br>1100 DEXTER AVE N STE 220<br>SEATTLE, WA  98109 - 3598 |

Insurance is afforded by company indicated below:
(A capital stock corporation)

Great American Insurance Company

| POLICY LEVEL PREMIUM SUMMARY | |
|---|---|
| **Coverage** | **Premium** |
| MARINE COMMERCIAL LIABILITY | $       3,000.00 |
| MISCELLANEOUS PROPERTY FLOATER | $       1,000.00 |
| **Total Policy Premium** | $       4,000.00 |

**FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 22 97 (01/01).

L. Meier Decl., Ex. 5, p. 5



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2297 (Ed. 01 01)**

**Policy:**  OMH 3133724 05

## OCEAN MARINE FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

|  | FORM AND EDITION | AMENDED Effective Date ADDED | Effective Date DELETED | FORM DESCRIPTION |
|---|---|---|---|---|
| 1. | GAI2020   01/05 | | | EMPLOYEE BENEFITS LIABILITY DEC |
| 2. | GAI2021   01/05 | | | EMPLOYEE BENEFITS LIABILITY COVERAG |
| 3. | GAI2168   12/09 | | | MCL STOP GAP EMPLOYERS LIABILITY |
| 4. | GAI2193   12/13 | | | MARINE COMMERCIAL LIABILITY-MCL-B1 |
| 5. | GAI2195   03/10 | | | MCL CONTENTS MCL-B1 |
| 6. | GAI2213   01/01 | | | NAMED INSURED ENDORSEMENT |
| 7. | GAI2244   01/01 | | | OCEAN MARINE DECLARATIONS PAGE |
| 8. | GAI2260   09/11 | | | MARINE POLICY GENERAL TERMS & CONDS |
| 9. | GAI2298   01/01 | | | General Endorsement for Marine Comm |
| 10. | GAI2303   06/03 | | | MINIMUM EARNED PREMIUM |
| 11. | GAI2391   01/01 | | | MCL BLANKET ADDITIONAL INSURED |
| 12. | GAI2392   01/01 | | | MCL BLANKET WAIVER OF SUBROGATION |
| 13. | GAI2398   01/15 | | | TERRORISM COVERAGE ENDORSEMENT |
| 14. | GAI2400   01/01 | | | MCL PREMIUM AND REPORTING-FLAT PREM |
| 15. | GAI2417   01/01 | | | OM COVG LEVEL DEC MARINE COMM LIAB |
| 16. | GAI2421   12/15 | | | MCL LTD POLLUTION MARITIME OPER |
| 17. | GAI2427   09/03 | | | MISCELLANEOUS PROPERTY FLOATER |
| 18. | GAI2480   01/01 | | | MCL HIRED AND NON-OWNED AUTO LIAB |

GAI 2297 (Ed. 01/01)                              (Page 1 of 1)

L. Meier Decl., Ex. 5, p. 6

**GREAT AMERICAN**
**INSURANCE GROUP**

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 2260 (Ed. 09 11)**

# MARINE POLICY GENERAL TERMS AND CONDITIONS

**GUIDE TO POLICY CONSTRUCTION**

A Great American Insurance Ocean Marine Policy consists of:

    **A.** a policy jacket;

    **B.** Marine Policy General Terms and Conditions;

    **C.** one or more underlying lines of Insurance Policy Declarations;

    **D.** one or more Coverage Parts (each line of insurance is a coverage part) for each line of insurance Declarations;

    **E.** each coverage part consists of:

        **1.** a line of insurance Conditions form (if applicable);

        **2.** one or more Cause of Loss forms (if applicable);

        **3.** applicable Endorsements.

**BREACH OF WARRANTY**

If an Insured breaches any warranty by which:

    **a)** it undertakes that some particular thing shall be done, or some condition shall be fulfilled; or

    **b)** it affirms the existence or non-existence of a particular state of facts, then the Insurer is discharged from all liability under the policy from the start of the breach.

**INSURED'S REPRESENTATIVE**

It is a condition of this policy that any broker, person, firm or corporation who shall procure this insurance to be made by the Company shall be deemed to be exclusively the agent of the Insured in any and all notices, transactions and representations relating to this insurance or connected with or arising out of the same during its continuance or with respect to notice of cancellation.

**CANCELLATION**

    **1.** The first Named Insured shown in the policy Declarations may cancel this policy by mailing or delivering to the company advance written notice of cancellation.

    **2.** The company may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **A.** 10 days before the effective date of cancellation if the company cancels for non-payment of premium; or

        **B.** 30 days before the effective date of cancellation if the company cancels for any other reason; or

**C.** the number of days allowed in the specific cancellation provisions of the coverage forms forming a part of this policy.

## CAPTIONS AND TITLES

Clause Captions and Titles are inserted for convenient reference only and are not to be deemed part of this Policy.

## CHANGES

This policy contains all of the agreements between the Named Insured and the Company concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the company's consent.  This policy's terms can be amended or waived only by endorsement issued by the company and made a part of this policy.

## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC EXCLUSION CLAUSE

THIS CLAUSE SHALL BE PARAMOUNT AND SHALL OVERRIDE ANYTHING CONTAINED IN THIS INSURANCE INCONSISTENT THEREWITH

This insurance excludes loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened terrorist act involving chemical, biological, bio-chemical or electromagnetic materials, where it appears that one purpose of the release of such materials was to inflict harm.

## CHOICE OF LAW

The terms of this Policy shall be construed pursuant to, and the rights of the parties hereto shall be governed and controlled by, the general maritime law of the United States; and in the absence thereof, the laws of the State of New York.

## CONCEALMENT, MISREPRESENTATION AND FRAUD

This policy is void in any case of fraud, intentional concealment or misrepresentation of a material fact by the Named Insured or any other insured, at any time.

## EXAMINATION OF BOOKS AND RECORDS

The company may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## EXAMINATION UNDER OATH

Any Insured, at the request of the Company, shall submit to questioning under oath, at such times as may be reasonably required, about any matter relating to this insurance or a claim under this policy, including the Insured's books and records.

## F.C. & S. CLAUSE

Notwithstanding anything to the contrary contained in this Policy, this insurance is warranted free from any claim for or in respect of any loss, damage, liability or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt, threat, or of any taking of the Vessel by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also, from all consequences of hostilities or warlike operations (whether there be a declaration of war or not) but the foregoing shall not exclude collision, explosion or contact with any fixed or floating object (other than a mine, torpedo or similar device), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this clause "power" includes any authority maintaining naval, military, or air forces in association with a power; also warranted free, whether in time of peace or war, from all loss, damage, liability or expense caused by or resulting from

GAI 2260 (Ed. 09/11)                    (Page 2 of 6)

any weapon of war, or any experimental or other device in the nature thereof, employing atomic or nuclear fission, fusion or reaction, or radioactive force or matter, or the consequences thereof.

Further warranted free from the consequences of civil war, revolutions, rebellion, insurrection, or civil strife arising therefrom, or piracy.

In the event that this Policy insures the liability of the Insured, of any kind or nature, in addition to the foregoing warranties and exclusions, this insurance is also warranted free from any claim for loss, damage, liability or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the Insured's liability for such loss, damage, liability or expense is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage, disembarkation of troops, combatants or material of war, the placement of the Vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without the consent of the Insured, shall be considered a warlike act for the purposes of this Policy.

If war risks are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains in force.

## LIMITATION OF TIME AND RIGHT TO SUE

No suit or action against the Company shall be maintainable in any court of law, admiralty or equity:

(a) on any claim for physical loss or damage to the property insured under this Policy, or with respect to any charge or expense arising therefrom, unless, as a condition precedent thereto, the Insured has complied with all of the warranties, stipulations and conditions contained in this Policy and unless commenced within twelve calendar months next following the physical loss or damage out of which the claim arose, or the incurring of the said expense or charge;

(b) in respect of any other claim under this Policy, unless, as a condition precedent thereto, the Insured shall have complied with all of the warranties, stipulations and conditions contained in this Policy, nor until the Insured has paid a judgment after the actual trial unless the Insured's obligation to pay has been determined by written agreement of the Insured, the claimant and the Company, nor in either event unless suit is instituted within twelve calendar months after the date of such payment or written agreement;

and in either case above, providing that where such limitation of time is prohibited by the laws of the state wherein this policy is issued, then and in that event no suit or action under this Policy shall be maintainable unless commenced within the shortest limitation of time permitted under the laws of such state; and

## NOTICE OF LOSS

(a) In the event of accident or occurrence causing loss or damage to the property insured, notice shall be given to the Underwriters, prior to the survey, so that they may appoint a Surveyor of their choosing, if they so desire; and whenever the extent of the damage is ascertainable, the Insurer may take or may require the Insured to take tenders for the repair of such damage.

(b) In the event of any accident or occurrence arising from a risk insured under this policy, notice thereof shall be given to the Company as soon as practicable, and further, that any and every process, pleading and paper of any kind relating to such accident or occurrence shall be forwarded promptly to the Company.

(c) In respect of any accident or occurrence arising from a risk insured under this policy, the Insured is obligated to and shall take such steps to protect its (and the Company's) interests as would reasonably be taken in absence of this or similar insurance.  This insurance, however, shall be void and of no force or effect, in respect of any accident or occurrence, in the event the Assured shall make or shall have made any admission of liability either before or after such accident or occurrence.

(d) The Company shall have the option of naming attorneys to represent the Assured in the defense of any claim, insured hereunder, made against the Assured, and the Company may exercise exclusive direction and control of the said defense.  The Assured shall not assume any obligations, admit any liability, or incur any expense for which the company may be liable, without prior written approval.

Whenever required by the Company, the Insured shall aid in securing information, evidence, obtaining of witnesses, and cooperate with the Company in all matters which the Company may deem necessary in the defense of any claim or suit or appeal from any judgment in respect of any occurrence as hereinbefore provided.

**NO BENEFIT TO BAILEE**

No person or organization, other than the Insured, having custody of the property insured hereunder, will benefit from this insurance.

**OCCURRENCE CLAUSE**

It is agreed that a sequence of damages arising directly or indirectly from the same peril shall be treated as one casualty.

**OTHER INSURANCE**

If other valid and collectible insurance exists protecting the Assured against a loss covered by this Policy, this Policy shall be null and void with respect to said loss whether the Assured is specifically named in such other policy of insurance or not; provided, however, that if the applicable Limit of Liability of such other valid and collectible insurance is not sufficient to protect the Assured against such loss, this policy shall apply, but only as excess insurance over such other valid and collectible insurance in an amount equal to the applicable Limit of Liability of this Policy and not as a contributing insurance.

**POLLUTION EXCLUSION**

This policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, liability, cost, expense, fine, or penalty of any kind or nature, whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly in consequence of, or with respect to, the actual, alleged, or potential or substantial threat of a discharge, emission, dispersal, spillage, release, escape or leakage, upon land, the atmosphere, or any watercourse or body of water of pollutants, including but not limited to oil, fuel, petroleum products, chemicals, toxic materials or substances, hazardous materials or substances, smoke, thermal irritants, vapors, soot, fumes, waste, waste materials, invasive organisms, acids, alkalis, irritants, contaminants or other similar substances.

**AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A. ENDORSEMENT (MARCH 1, 2003)**

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

    1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)**

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that:

GAI 2260 (Ed. 09/11)                          (Page 4 of 6)

if fire is an insured peril;

and

where the subject matter insured or in the case of a reinsurance, the subject matter insured by the original insurance is within the U.S.A., its islands, onshore territories or possessions;

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, Excluding however any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## SEAWORTHINESS CLAUSE

Warranted that at the inception of this policy the vessel(s) shall be in a seaworthy condition and, thereafter, during the currency of the policy, the Insured shall exercise due diligence to keep the vessel(s) seaworthy, and in all regards fit, tight, properly manned, equipped and supplied.

## STRIKES, RIOTS, ETC.

Warranted free of loss, damage or expense caused by or resulting from strikes, lockouts, labor disturbances, riots, malicious mischief or vandalism, civil commotions or the acts of any persons taking part in any such occurrence or disorder.

## SUE AND LABOR CLAUSE

In case of any loss or misfortune, it shall be lawful and necessary for the Assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance; to the charges whereof the Company will contribute according to the Rate and Quantity of the sum herein insured.  And it is especially declared and agreed that no acts of the Company or Assured in recovering, saving or preserving the property insured shall be considered as a waiver or acceptance of abandonment.

## TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO THE COMPANY

If any person or organization to or for whom the company makes payment under this insurance has rights to recover damages from another, all those rights are transferred to the company to the extent of the company's payment.  That person or organization must do everything necessary to secure the company's rights and must do nothing after a loss to impair them.  If the Company makes a recovery from any third party because of any damage or loss for which the company has made a payment under this insurance, the company shall be entitled to retain all the proceeds of such recovery up to the amount of the payment hereunder, plus all survey and adjustment expenses incurred on account of such damage or loss and all sums expended to effect such recovery, including but not limited to attorneys fees and expenses, fees and expenses of experts or appraisers, bonds and other costs.

## ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy or any coverage relating to or referred to in any certificates or other evidences of insurance or any claim would be in violation of any United States, United Kingdom or European Union economic or trade sanctions, laws, or regulations and/or United Nations resolutions, such coverage shall be null and void.

## CONFLICT OF TERMS AND CONDITIONS

In the event that the aforesaid General Terms and Conditions conflict in any manner with the specific terms and conditions of the attached policy, the specific terms and conditions shall take precedence and be applicable.

L. Meier Decl., Ex. 5, p. 11

**SIGNATORY CLAUSE**

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such provisions, stipulations, and agreements as may be added hereto.

In witness thereof, the Company has caused this Policy to be signed by its President and Secretary.

PRESIDENT                                          SECRETARY

**All other terms and conditions of this policy remain unchanged.**

Case 2:21-cv-01002-JCC   Document 18-5   Filed 09/09/21   Page 14 of 77

0624702



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2213 (Ed. 01 01)**

**Policy No.**     OMH 3133724 05

# NAMED INSURED ENDORSEMENT

**It is agreed that the Named Insured and the Form of Business Organization shown in the Declarations is amended to read as follows:**

| |
|---|
| BEAR ENTERPRISES, LLC |
| YACHT VENTURES, LLC |
| ARES LEASING, LLC |
| MK PACIFIC, LLC |
| BEAR FOODS INTERNATIONAL, LLC |
| BEAR TRADING ENTERPRISES, LLC |
| MK SALVAGE VENTURE, LLC |

**GREAT AMERICAN**
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2298 (Ed. 01 01)**

**Policy:**          OMH 3133724 05
**Effective Date:** September 28, 2016

**Insured:**  BEAR ENTERPRISES, LLC

# OCEAN MARINE GENERAL ENDORSEMENT

## General Endorsement for Marine Commercial Liability

This endorsement modifies insurance provided under the following:

MARINE COMMERCIAL LIABILITY COVERAGE PART PRODUCTS-COMPLETED
OPERATIONS LIABILITY COVERAGE PART

A. Section II - Who is An Insured is amended to include as an
   additional insured the person(s) or organization(s) (referred
   to below as vendor) shown in the Schedule, but only with respect
   to liability for "bodily injury" or "property damage" arising out
   of "your products" shown in the Schedule which are distributed or
   sold in the regular course of the vendor's business, subject to
   the following additional exclusions:

ADDITIONAL INSURED:

Biscottea Baking Co LLC

1. The insurance afforded the vendor does not apply to:

a. "Bodily Injury" or "Property Damage" for which the vendor is
   obligated to pay damages by reason of the assumption of liability
   in a contract or agreement. This exclusion does not apply to
   liability for damages that the vendor would have in the absence
   of the contract agreement;

b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally
   by the vendor;

d. Repackaging, except when unpacked solely for the purpose of
   inspection, demonstration, testing, or the substitution of parts
   under instructions from the manufacturer, and then repackaged in
   the original container;

e. Any failure to make such inspections, adjustments, tests or

L. Meier Decl., Ex. 5, p. 14

## General Endorsement for Marine Commercial Liability

servicing as the vendor has agreed to make or normally undertakes
to make in the usual course of business, in connection with the
distribution or sale of the products;

f. Demonstration, installation, servicing or repair operations,
except such operations performed at the vendor's premises in
connection with the sale of the product;

g. Products which, after distribution or sale by you, have been
labeled or relabeled or used as a container, part or ingredient
of any other thing or substance by or for the vendor; or

h. "Bodily Injury" or "Property Damage" arising out the sole
negligence of the vendor for its own acts or omissions or those
of its employees or anyone else acting on its behalf. However,
this exclusion does not apply to:

(1) The exceptions contained in Sub-Paragraphs d. or f.; or

(2) Such inspections, adjustments, tests or servicing as the
vendor has agreed to make or normally undertakes to make
in the usual course of business, in connection with the
distribution or sale of the products.

2. This insurance does not apply to any insured person or
organization, from whom you have acquired such products, or any
ingredient, part or container, entering into, accompanying or
containing such products.

* O5 * 09/28/2016 * OMH 3133724-05 * Great American Insurance Company

0624702



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2303 (Ed. 06 03)**

## MINIMUM EARNED PREMIUM

Except in the event of cancellation by this company, the minimum earned premium under this policy is $  2,500.00      .

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 16



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 2398 (Ed. 01 15)

# DISCLOSURE PURSUANT TO TERRORISM RISK
# INSURANCE ACT

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE
DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT
GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

Terrorism Premium (Certified Acts) $ 0.00

**A.  Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing
the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk
Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this
endorsement or in the policy Declarations.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the
federal program. The federal share equals a percentage (as shown in Table below) of that portion of the amount of
such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to
terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury
shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

| Year | Federal Share |
|------|---------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 | 80% |

**C.  Cap on Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100
billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall
not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case
insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the
Secretary of the Treasury.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 17



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2417 (Ed. 01 01)**

**Policy:** OMH 3133724 05

## OCEAN MARINE COVERAGE LEVEL DECLARATIONS PAGE

NAMED INSURED: BEAR ENTERPRISES, LLC

POLICY #: OMH 3133724
POLICY EFFECTIVE DATE: 09/28/2016          POLICY EXPIRATION DATE: 09/28/2017

| COVERAGE | LIMITS OF INSURANCE | PREMIUM |
|---|---|---|
| Marine Commercial Liability Coverage - Form GAI 2193 | | |
| Policy Aggregate Limit (Including Products - Completed Operations Aggregate and including all endorsed cover) | $    2,000,000 | |
| Bodily Injury and Property Damage Liability | $    1,000,000 | |
| Personal and Advertising Injury Limit | $    1,000,000 | |
| Products-Completed Operations Aggregate | $    2,000,000 | |
| Medical Payments - any one person | $       5,000 | |
| Liability for Damage to Premises Rented to you - Any one premises | $     100,000 | |
| Each Occurrence (including all endorsed cover) | $    1,000,000 | |
| MCL Flat Annual Premium | | $    3,000.00 |

| | LIMITS OF INSURANCE | PREMIUM |
|---|---|---|
| Blanket Additional Insured Endorsement | | $    INCLUDED |
| Blanket Waiver of Subrogation Endorsement | | $    INCLUDED |
| Employee Benefits Liability Endorsement | $    1,000,000 | $    INCLUDED |
| Hired and Non-Owned Auto Endorsement | $    INCLUDED | $    INCLUDED |
| Limited Pollution Liability Endorsement | $    1,000,000 | $    INCLUDED |

| TOTAL PREMIUM DUE AT INCEPTION: | | $    3,000.00 |
|---|---|---|
| **Deductibles:** | | |
| Bodily Injury: | $    2,500 | |
| Property Damage: | $    2,500 | |
| Personal and Advertising Injury: | $    2,500 | |
| Maximum Deductible - all coverage for one occurrence: | $    2,500 | |

**THE BUSINESS OF THE NAMED INSURED IS:**

HOLDING COMPANY WITH VARIOUS INVESTMENTS
INCLUDING FOOD DISTRIBUTION, LUXURY YACHT
CHARTERING AND GOLD SALVAGE OPERATION.

**SCHEDULE OF LOCATIONS YOU OWN, RENT OR OCCUPY:**

4209 21st Avenue West
Suite 400
Seattle, WA  98199



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2195 (Ed. 03 10)**

# MARINE COMMERCIAL LIABILITY POLICY MCL-B1
## CONTENTS

Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability                Page   1

Section **I** – Coverage **B** – Personal and Advertising Injury Liability                Page   8

Section **I** – Coverage **C** – Medical Payments                Page  12

Additional Payments – Coverages **A, B** and Endorsed Coverage                Page  13

Section **II** – Who is an Insured                Page  14

Section **III** – Limits of Insurance                Page  16

Section **IV** – Deductible applicable to Coverage **A, B** and Endorsed Coverage                Page  17

Section **V** – Exclusions applicable to all coverages and endorsements                Page  18

Section **VI** – Policy Warranties                Page  21

Section **VII** – Marine Commercial Liability Coverage General Conditions                Page  22

Section **VIII** – Definitions                Page  26



# MARINE COMMERCIAL LIABILITY COVERAGE
## MCL-B1

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the Company providing this insurance.  The word "Insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION VIII - DEFINITIONS.**

### SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   A. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the Insured against any "suit" seeking those damages.  However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      (1) the amount we will pay for damages and Additional Payments is limited as described in **SECTION III - LIMITS OF INSURANCE** and

      (2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or Additional Payments under Coverages A, B or Additional Payments or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Additional Payments - Coverages A, B and Endorsed Coverage.**

   B. This insurance applies to "bodily injury" and "property damage" only if:

      (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) the "bodily injury" or "property damage" occurs during the policy period.

      (3) Prior to the policy period, no Insured listed under Paragraph **1.** of **SECTION II WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed Insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   C. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or any

"employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**D.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Insured listed under Paragraph **1.** of **SECTION II WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** becomes aware of any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**E.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

This insurance does not apply to:

**A. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured.

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**B. Contractual Liability**

"Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** that the Insured would have in the absence of the contract or agreement; or

**(2)** assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**C. Liquor Liability**

"Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

**(1)** causing or contributing to the intoxication of any person;

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

## D. Workers' Compensation and Similar Laws

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## E. Employer's Liability

"Bodily injury" to:

**(1)** an "employee" of the Insured arising out of and in the course of:

    **(a)** employment by the Insured; or

    **(b)** performing duties related to the conduct of the Insured's business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** whether the Insured may be liable as an employer or in any other capacity; and

**(2)** to any obligation to share damages with or repay someone else who must pay damages because of the injury;

**(3)** to all employees of Named Insureds as stipulated in their policy.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

## F. Pollution

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," at any time.

Exclusion **F.(1)** does not apply to "bodily injury" sustained within a building at a premises, site or location owned or occupied by, or rented or loaned to any Insured, if such "bodily injury" is caused by smoke, fumes, vapor or soot:

    **(a)** from equipment used to heat, cool or dehumidify that building; or

    **(b)** that escapes from units used to heat water.

Exclusion **F.(1)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire":

    **(a)** at or from any premises, site or location which is owned or occupied by or rented or loaned to any Insured.

**(b)** at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor.

**(2)** Any loss, cost, or expense arising out of any:

**(a)** request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assess the effects of "pollutants."

**G. Watercraft**

"Bodily Injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to any Insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to:

**(1)** a watercraft while ashore on premises you own or rent;

**(2)** a watercraft you do not own that is:

**(a)** less than 26 feet long; and

**(b)** not being used to carry persons or property for a charge;

**(3)** liability assumed under any "insured contract" for the ownership, maintenance  or use of  watercraft.

**H. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** the transportation of "mobile equipment" by an "auto" owned or operated by or rented or leased to any Insured; or

**(2)** the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**I. Explosion, Collapse and Underground Property Damage**

"Property damage" arising out of the "explosion hazard," the "collapse hazard" or the "underground property damage hazard."

This exclusion does not apply to:

**(1)** operations performed for you by others; or

**(2)** "property damage" included within the "products-completed operations hazard."

**J. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

**K. Damage to Property**

"Property damage" to:

**(1)** property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** property loaned to you;

**(4)** personal property in the care, custody or control of the Insured;

**(5)** that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  A separate Limit of Insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**L. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**M. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

L. Meier Decl., Ex. 5, p. 24

**N. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**O. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "your product";

**(2)** "your work"; or

**(3)** "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**P. Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**Q. Employment-Related Practices**

"Bodily injury" to:

**(1)** a person arising out of any:

    **(a)** refusal to employ that person;

    **(b)** termination of that person's employment; or

    **(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

consequential "bodily injury" as a result of **(a), (b),** or **(c),** above;

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

    **(a)** whether the injury-causing event described in the paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

    **(b)** whether the Insured may be liable as an employer or in any other capacity; and

L. Meier Decl., Ex. 5, p. 25

(c) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R. Aircraft or Auto**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or "auto" owned or operated by or rented or loaned to any Insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or "auto" that is owned or operated by or rented or loaned to any Insured.

**(1)** This exclusion does not apply to:

**(2)** parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft; or

**(3)** "bodily injury" or "property damage" arising out of

(a) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in paragraph F.(2) or F.(3) of the definition of "Mobile equipment" (Section VIII.14).

**S. Fungi or Bacterial**

**(1)** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up,  removing, containing,  treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**(3)** This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**T. Electronic Data**

**(1)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

**(2)** As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, transmitted to or from computer software, including systems and applications software, hard of floppy disks CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

L. Meier Decl., Ex. 5, p. 26

**U. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** the CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **C.** through **H.** and **J.** through **O.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE.**

## SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**A.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking

damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** the amount we pay for damages and Additional Payments is limited as described in **SECTION III - LIMITS OF INSURANCE** and

**(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or Additional Payments under Coverage **A**, **B** or Additional Payments or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Additional Payments - Coverages A, B and Endorsed Coverage.**

**B.** This insurance applies to:

"Personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period of this policy.

**2. Exclusions**

This insurance does not apply to:

**A. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**B.  Material Published with Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**C.  Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**D.  Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the Insured.

**E.  Contractual Liability**

"Personal and advertising injury" for which the Insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

**F.  Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**G.  Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**H.  Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**I.  Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**J.  Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an Insured whose business is:

**(1)**  advertising, broadcasting, publishing or telecasting;

**(2)**  designing or determining content of websites for others; or

**(3)**  an Internet search, access, content or service provider.

L. Meier Decl., Ex. 5, p. 28

However, this exclusion does not apply to Paragraphs **17. A., B.** and **C.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**K. Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**L. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**M. Pollution**

"Personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**N. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

**O. Employment-Related Practices**

"Personal and advertising injury" to:

**(1)** a person arising out of any:

   **(a)** refusal to employ that person;

   **(b)** termination of that person's employment; or

   **(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination directed at that person; or

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed

This exclusion applies:

   (a) whether the injury-causing event described in the paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

    **(b)** whether the Insured may be liable as an employer or in any other capacity; and

    **(c)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3)** any loss, cost or expense arising out of any:

    **(a)** request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, abate, neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)** claim or "suit" by or on behalf of a governmental authority or other person or organization, for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, abating, neutralizing, or in any way responding to, or assessing the effects of "pollutants."

**(4)** "personal and advertising injury" to:

    **(a)** a person arising out of any:

        **(1)** refusal to employ that person;

        **(2)** termination of that person's employment; or

        **(3)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; or

    consequential "personal and advertising injury" as a result of **(1), (2),** or **(3),** above.

    **(b)** the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

    This exclusion applies:

    **(c)** whether the Insured may be liable as an employer or in any other capacity; and

**(5)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## P.  Fungi or Bacteria

**(1)** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding  to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

## Q.  Distribution of Material in Violation of Statutes

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)  the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)  the CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)  any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## SECTION I - COVERAGE C - MEDICAL PAYMENTS

**1.  Insuring Agreement**

**A.**  We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)**  on premises you own or rent;

**(2)**  on ways next to premises you own or rent; or

**(3)**  because of your operations;

provided that:

**(1)**  the accident takes place in the "coverage territory" and during the policy period of this policy;

**(2)**  the expenses are incurred and reported to us within one year of the date of the accident; and

**(3)**  the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.**  We will make these payments regardless of fault.  These payments will not exceed the applicable Limit of Insurance.  We will pay reasonable expenses for:

**(1)**  first aid administered at the time of an accident;

**(2)**  necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)**  necessary ambulance, hospital, professional nursing and funeral services.

## 2.  Exclusions

We will not pay expenses for "bodily injury":

**A.  Any Insured**

To any Insured, except "volunteer workers."

**B.  Hired Person**

To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

**C.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

L. Meier Decl., Ex. 5, p. 31

**D. Workers Compensation and Similar Laws**

To a person, whether or not an "employee" of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or similar law.

**E. Athletics Activities**

To a person injured while taking part in, practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**F. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard."

**G. Coverage A Exclusion**

Excluded under Coverage **A** or in the Section **I General Exclusions Applicable to All Coverages**.

**H. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## ADDITIONAL PAYMENTS - COVERAGES A, B AND ENDORSED COVERAGE

**These additional payments will reduce the applicable Limits of Insurance:**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

   **A.** All expenses we incur.

   **B.** Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **C.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

   **D.** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including the actual loss of earnings up to $250 a day because of time off from work.

   **E.** All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the Insured.

   **F.** Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **G.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

2. If we defend an Insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**A.** The "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**B.** This insurance applies to such liability assumed by the Insured;

**C.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

**D.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

**E.** The indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

**F.** The indemnitee:

**(1)** agrees in writing to:

**(a)** cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** notify any other insurer whose coverage is available to the indemnitee; and

**(d)** cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** provides us with written authorization to:

**(a)** obtain records and other information related to the "suit"; and

**(b)** conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid and will be included in the applicable Limits of Insurance.

Our obligation to defend an Insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Additional Payments ends when:

**A.** We have used up the applicable Limit of Insurance in payment of judgments or settlements; or

**B.** The conditions set forth above, or the terms of the agreement described in Paragraph **F.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**A.** An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

L. Meier Decl., Ex. 5, p. 33

**B.**  A partnership or joint venture, you are an Insured.  Your members, your partners and their spouses are also Insureds, but only with respect to the conduct of your business.

**C.**  A limited liability company, you are an Insured.  Your members are also Insureds, but only with respect to the conduct of your business.  Your managers are Insureds, but only with respect to their duties as your managers.

**D.**  An organization other than a partnership, joint venture or limited liability company, you are an Insured.  Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also Insureds, but only with respect to their liability as stockholders.

**E.**  A trust, you are an Insured.  Your trustees are also Insured, but only with respect to their duties as trustees.

**2.**  Each of the following is also an Insured:

**A.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are an Insured for:

   **(1)**  "bodily injury" or "personal and advertising injury":

   **(a)**  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while either is in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   **(b)**  to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

   **(c)**  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

   **(d)**  arising out of his or her providing or failing to provide professional health care services.

   **(2)**  "property damage" to property:

   **(a)**  owned, occupied or used by;

   **(b)**  rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

**B.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**C.**  Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)**  with respect to liability arising out of maintenance or use of that property; and

   **(2)**  until your legal representative has been appointed.

**D.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

**A.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**B.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an Insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**A.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**B.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**C.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**A.** Insureds;

**B.** Claims made or "suits" brought; or

**C.** Persons or organizations making claims or bringing "suits."

**2.** The Policy Aggregate Limit is the most we will pay for the sum of:

**A.** Medical expenses under Coverage **C**;

**B.** Damages and Additional Payments Under Coverage **A** including damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard";

**C.** Damages and Additional Payments under Coverage **B;** and

**D.** Damages and Additional Payments under any additionally endorsed coverage.

3. Subject to **2.** above, the Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for the sum of all damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard."

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages and Additional Payments because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2., 3.** or **4.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **A.** Damages and Additional Payments under Coverage **A** and **B**;

   **B.** Medical expenses under Coverage **C**; and

   **C.** Damages and Additional Payments under any additionally endorsed coverages;

   because of all "bodily injury," "property damage" and Additional Payments arising out of any one "occurrence."

6. Subject to **5.** above, the Damage To Premises Rented to You Limit is the most we will pay under Coverage **A** for damages and Additional Payments because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with the permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

8. Subject to **5.** above, the Limit of Liability for any endorsed coverage is the most we will pay for damages and Additional Payments covered by that endorsement.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEDUCTIBLE APPLICABLE TO COVERAGES A AND B (NOT INCLUDING SUPPLEMENTAL PAYMENTS) AND ANY COVERAGE ADDED TO THIS POLICY BY ENDORSEMENT

1. **Deductible Amounts**

   **A.** The "bodily injury" liability and Additional Payments deductible is as shown in the Declarations;

   **B.** The "property damage" liability and Additional Payments deductible is as shown in the Declarations;

   **C.** The "personal and advertising injury" liability and Additional Payments is as shown on the Declarations; and

   **D.** Marine Liability Coverages and Additional Payments endorsed to the policy deductible as shown on the Declarations or in the Endorsement; and

   **E.** "Bodily injury" liability and/or "property damage" liability and/or "personal and advertising injury" and/or Marine Liability Coverages combined deductible as shown in the Declarations.

   Our obligation to pay damages on your behalf under the "bodily injury" liability "property damage" liability and "personal and advertising injury" liability insured in Section **I** - Coverage **A** and Coverage **B**, or under any other

coverages endorsed onto this policy, applies only to the amount of damages in excess of any applicable deductible amounts stated in the Declarations, as listed in **A.** to **E.** above.

2. Each deductible amount is stated on a per "occurrence" basis and applies separately to each "occurrence" regardless of the number of persons or organizations who sustain or claim damages for "bodily injury," "property damage," or "personal and advertising injury" arising out of that "occurrence."

3. The terms of this insurance, including but not limited to those with respect to:

    **A.** Our right and duty to defend the Insured against any "suit" seeking damages for "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies; and

    **B.** Your duties in the event of an "occurrence," claim, or "suit"

    apply irrespective of the application of the deductible amount.

4. We may, if we deem it expedient to do so, pay any part or all of the deductible amount to effect settlement of any claim or "suit" or to satisfy a judgment and, upon notification of the action taken, you shall promptly reimburse us for the deductible amount paid by us.

## SECTION V - EXCLUSIONS APPLICABLE TO ALL COVERAGES AND ENDORSEMENTS

The following exclusions apply to all sections, including endorsed coverage, of this policy.

1. **Nuclear Energy Liability Exclusion (Broad Form)**

    This insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

    **(1)** with respect to which an "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limits of Liability; or

    **(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which (**a**) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any

    law amendatory thereof, or (**b**) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

    **(1)** the "nuclear material" (**a**) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (**b**) has been discharged or dispersed therefrom;

**(2)** the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

**(3)** the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**As used in this clause:**

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material **(a)** containing "by-product material" other than tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** any "nuclear reactor";

**(b)** any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel," or **(3)** handling, processing or packaging "waste";

**(c)** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

2. **Liability Arising Out of Lead Exclusion**

This insurance does not apply to:

**A.** "Bodily injury," "property damage," or "personal and advertising injury" arising out of, resulting from, or in any way caused by or related to the actual, alleged or threatened ingestion, inhalation, or absorption of, or exposure to, lead in any form, from any source; or

**B.** Any loss, cost, expense, liability or any other obligation arising out of, resulting from, or in any way related to, any:

**(1)** claim, "suit," request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, abate, neutralize, or in any way respond to, or assess the effects of lead from any source, or to any

**(2)** claim or "suit" by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, abating, neutralizing, or in any way responding to or, assessing the effects of lead in any form, from any source.

We shall not be obligated to investigate on behalf of any Insured or to defend or indemnify any Insured or any person or entity claiming any right under this policy for the matters excluded in this Exclusion.

3. **Asbestos Exclusion**

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of or related in any way to asbestos or asbestos-containing materials.

We shall not have the duty to defend any such claim or "suit."

4. **Health Hazard Exclusion**

This insurance does not apply to any "bodily injury," "property damage" or "personal and advertising injury" arising wholly or in part, directly or indirectly, from any single, continuous, intermittent or repeated exposure to, ingestion of, inhalation of or absorption of "electromagnetic field radiation" or any "health hazard". We shall not be obligated to investigate on behalf of any Insured or to defend or indemnify any Insured or any person or entity claiming any right under this policy for the matters excluded in this exclusion.

5. **Professional Services - Errors and Omissions Exclusion**

This insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" actually or allegedly arising from any negligence, error, omission, malpractice, or mistake in providing or failing to provide any professional service by or on behalf of any Insured.  Professional services includes, but is not limited to, the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering or data processing services.

6. **Directors and Officers Exclusion**

This insurance does not apply to:

**A.** Any actual or alleged liability arising out of the Insured's status, capacity, duty or responsibility as an Officer, Director or Trustee of any corporation, by reason of any wrongful act, breach of duty, improper conduct or conflict of interest in the performance of duties, responsibilities or accountability as such an Officer, Director or Trustee, including, but not limited to, any actual or alleged misstatement, misleading statement, unjust enrichment, gain of personal profit or advantage to which the Insured was or is not entitled legally, dishonest

act, self-dealing, or bad-faith conduct, in the capacity as an Officer, Director or Trustee, or with respect to the capital or assets of the corporation, or any action taken beyond the Insured's authority as such an Officer, Director or Trustee;

**B.** **A**ny actual or alleged liability arising out of or incidental to any actual or alleged violation of any federal or state law or regulation regulating, controlling or governing stocks, bonds or securities of any type or nature, including without limitation, the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Public Utility Holding Company Act of 1940, the Investment Advisers Act of 1940, and any so-called "Blue Sky" laws of any states or other jurisdiction;

**C.** Any actual or alleged liability arising out of or incidental to any actual or alleged violation of any federal or state law or regulation regulating, controlling or governing antitrust or the prohibition of monopolies, restraint of trade, unfair methods of competition, or deceptive acts and practices in trade or commerce including, without limitation, the Sherman Act and the Hart-Scott Rodino Antitrust Improvements Act;

**D.** Any actual or alleged liability of any Officer, Director or Trustee arising out of, incidental to, or asserted in any shareholder's derivative action;

**E.** Any actual or alleged liability arising out of or contributed to by the dishonesty or infidelity of any Insured; or

**F.** Any actual or alleged liability of a type which would be insured under a Directors and Officers Liability Insurance Policy or a Directors and Company Reimbursement Indemnity Policy of a type issued by stock insurance companies of the United States, regardless of: **(i)** whether the amount of such liability is less than or in excess of any applicable Limit of Liability of such a policy and **(ii)** whether any Insured actually has obtained such coverage.

**7. Securities and Exchange Act Exclusion**

This insurance does not apply to Professional Indemnity and Liability under the Securities Exchange Act absolutely.

**8. Punitive Damages Exclusion**

This insurance does not apply to any loss, damage, cost, liability, expense, treble or other increased damages, fine or penalty, of any kind or nature whatsoever, whether statutory or otherwise, imposed on the Insured as punitive or exemplary damages, or for the purpose, either in whole or in part, of punishing or deterring misconduct by the Insured or others.

**SECTION VI - POLICY WARRANTIES**

Each Insured must strictly comply with all of the following warranties during the policy period shown in the Declarations and, unless otherwise agreed to in writing by us, any failure to do so will render this insurance null and void as to any non-complying Insured, as to any "occurrence," "bodily injury," "property damage," or "personal and advertising injury" arising during the period of any such non-compliance.  For any such time that this insurance is null and void, return premium will be calculated on a pro rata basis, subject to the policy's cancellation terms.

**1. Required Insurance for Watercraft/Vessels that You Own, Operate, Lease or Charter**

Each Insured warrants and represents that all watercraft or vessels that it owns, operates, leases or rents shall be separately insured for Primary or Full Collision Liability and Protection and Indemnity Insurance, including Contractual and Collision Liability on the forms/coverage that are most commonly used for Marine Insurance for the watercraft/vessel and trade, in an amount at least equal to the each occurrence limit of this policy.

## SECTION VII - MARINE COMMERCIAL LIABILITY COVERAGE GENERAL CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this policy.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**A.** You must see to it that we are notified as soon as practicable of each "occurrence" or offense which may result in a claim or "suit." To the extent possible, notice should include:

**(1)** how, when and where the "occurrence" or offense took place;

**(2)** the names and addresses of any injured persons and witnesses; and

**(3)** the nature and location of any injury or damage arising out of the "occurrence" or offense.

**B.** If a claim is made or "suit" is brought against any Insured, you must:

**(1)** immediately record the specifics of the claim or "suit" and the date received; and

**(2)** notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**C.** You and any other involved Insured must:

**(1)** immediately send us copies of all demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** authorize us to obtain records and other information;

**(3)** cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**D.** No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**A.** To join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

**B.** To sue us on this policy unless all of its terms have first been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for damages that are not payable under the terms of this Coverage or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**4.  Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverage **A,** Coverage **B** or any coverage endorsed onto this policy, our obligations are limited as follows:

**A.  Primary Insurance**

This insurance is primary except when **B.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **C.** below.

**B.  Excess Insurance**

This insurance is excess over:

**(1)**  any other insurance, whether primary, excess, contingent or on any other basis:

   **(a)**  that is Fire, Extended Coverage, Builder's Risk, Installation Risk, Ship or Boat Repairers, or similar coverage for "your work";

   **(b)**  that is Fire insurance for premises rented to you, or temporarily occupied by you with permission of the owner;

   **(c)**  that is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   **(d)**  if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **G.** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

      **(1)**  any other insurance available to the Insured, covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the Insured has been added as an Additional Insured by endorsement.

When this insurance is excess, we will have no duty under Coverage **A** or **B** or any additional coverage endorsed onto this policy to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**  the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

**C.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit**

**A.** We will compute all premiums for this Policy in accordance with our rules and rates.

**B.** The first Named Insured, by acceptance of this policy warrants and agrees to keep a complete and accurate record of gross receipts from all operations covered by this policy and report to this Company as specified elsewhere in this policy.

**C.** This policy is issued in consideration of a deposit premium as shown on the Declarations Page, earned premium as computed shall be applied against such deposit premium. Premium earned in excess of the deposit premium shall be due and payable to this Company upon filing the required report of all such receipts.

**E.** If the Minimum Premium shown on the Declarations Page is less than the Deposit Premium and the earned premium computed is less than the Deposit Premium then we will return premium subject to the retention of the Minimum Premium shown on the Declarations Page.

**6. Representations**

By accepting this policy, you agree:

**A.** The statements in the Declarations are accurate and complete;

**B.** Those statements are based on representations you made to us; and

**C.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**A.** As if each Named Insured were the only Named Insured; and

**B.** Separately to each Insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others to Us**

If the Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after a loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

**10. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy, including premium, at anytime during the policy period and up to three years afterward.

**11. Inspections and Surveys**

**A.** We have the right but are not obligated to:

**(1)** make inspections and surveys at any time;

**(2)** give you reports on the conditions we find; and

**(3)** recommend changes.

**B.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**(1)** are safe or healthful; or

**(2)** comply with laws, regulations, codes or standards.

**C.** Paragraphs **A.** and **B.** of this condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**D.** Paragraph **B.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statute, ordinances or regulations, of boilers, pressure vessels or elevators.

**12. Premiums**

The first Named Insured shown in the Declarations:

**A.** Is responsible for the payment of all premiums; and

**B.** Will be the payee for any return premiums we pay.

**13. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**14. Cancellation**

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**B.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**C.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**D.** Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

**E.** If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**F.** Additional premium may be due and owed to this Company upon cancellation for those Coverage Sections underwritten on a reporting basis, since reports are to be rendered to the date of cancellation.

**G.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**15. Additional Insureds or Loss Payees**

Whenever Additional Insureds or loss payees are added to this policy, it is specifically agreed:

**A.** Such Additional Insureds and loss payees shall be insured hereunder only with respect to such of your specific activities and operations as would already be insured by this policy even in the absence of the naming of any Additional Insured or loss payee.  Coverage hereunder shall in no way be extended or broadened by the addition of any Additional Insured or loss payee.

**B.** The inclusion of Additional Insureds or loss payees shall in no way increase any applicable Limit of Liability hereunder.

**C.** In the event of any cancellation, nonrenewal, or change in policy coverage, we have no obligation to send notice of cancellation, nonrenewal, or change of coverage to any Additional Insured or loss payee unless such an obligation is specifically added to this policy by endorsement.  We shall not be required to notify any Additional Insureds or loss payees of any cancellation request from the Named Insured.

**16. Certificates of Insurance from Contractors, Subcontractors and Vendors**

You shall require and obtain Certificates of Insurance from your contractors, subcontractors and vendors evidencing that the following coverages are in full force and effect:

**A.** Commercial General Liability Insurance, including Contractual Liability and Waiver of Subrogation/Additional Insured Provision in your favor, for an amount of insurance at least equal to the limits of this policy;

**B.** Automobile Liability Insurance, with Blanket Additional Insured and Waiver of Subrogation for an amount at least equal to the limits of this policy; and

**C.** Workers' Compensation and Employers Liability Insurance with a Waiver of Subrogation in your favor least equal to the Employers' Liability limits of this policy.

**SECTION VIII - DEFINITIONS**

**1. "Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

**A.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **B.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** **"Auto"** means

    **A.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **B.** Any other vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

**3.** **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** **"Collapse hazard"** includes "structural property damage" and any resulting "property damage" to any other property at any time.

**5.** **"Coverage territory"** means:

    **A.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **B.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **A.** above, or

    **C.** All other parts of the world if the injury or damage arising out of:

        **(1)** goods or products made or sold by you in the territory described in **A.** above;

        **(2)** the activities of a person whose home is in the territory described in **A.** above, but is away for a short time on your business; or

        **(3)** "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

        provided the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **A.** above or in a settlement we agree to.

**6.** **"Electromagnetic field radiation"** means any discharge, emission, release, broadcast or transmission of any form of electromagnetic energy emanating from any power line, communications tower, generating system, electrical equipment or device or any other manmade source.

**7.** **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker." An employee of one Named Insured shall be deemed to be an employee of all Named Insureds.

**8.** **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**9.** **"Explosion hazard"** includes property damage arising out of blasting or explosion. The "explosion hazard" does not include "property damage" arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

**10.** **"Fungi"** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

L. Meier Decl., Ex. 5, p. 46

11. **"Health hazard"** means any chemical, acid, alkali, radioactive material, or any other irritant or other substance, product, or waster product or the fumes or other discharges or effects therefrom, whether liquid, gas or solid, alleged or determined to be toxic or harmful to the health of any person, plant or animal.

12. **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

13. **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **A.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **B.** You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    **C.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **D.** Your fulfilling the terms of the contract or agreement.

14. **"Insured contract"** means:

    **A.** A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **B.** A sidetrack agreement;

    **C.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **D.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **E.** An elevator maintenance agreement;

    **F.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **F.** does not include that part of any contract or agreement:

    **(1)** that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**15. "Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker."

**16. "Loading or unloading"** means the handling of property:

**A.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**B.** While it is in or on an aircraft, watercraft or "auto"; or

**C.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**17. "Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

**A.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**B.** Vehicles maintained for use solely on or next to premises you own or rent;

**C.** Vehicles that travel on crawler treads;

**D.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** power cranes, shovels, loaders, diggers or drills; or

**(2)** road construction or resurfacing equipment such as graders, scrapers or rollers;

**E.** Vehicles not described in **A., B., C.** or **D.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** cherry pickers and similar devices used to raise or lower workers;

**F.** Vehicles not described in **A., B., C.** or **D.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** equipment designed primarily for:

**(a)** snow removal;

**(b)** road maintenance, but not construction or resurfacing; or

**(c)** street cleaning;

    **(2)** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**18. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**19. "Personal and advertising injury"** means injury including consequential "bodily injury" arising out of one or more of the following offenses:

    **A.** False arrest, detention or imprisonment;

    **B.** Malicious prosecution;

    **C.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **D.** Oral or written publication of material, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **E.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **F.** The use of another's advertising idea in your "advertisement" or

    **G.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**20. "Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**21. "Products-completed operations hazard":**

    **A.** Includes all "bodily injury" and "property damage," occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** products that are still in your physical possession; or

        **(2)** work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** when all of the work called for in your contract has been completed;

            **(b)** when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

            **(c)** when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**B.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any Insured;

**(2)** the existence of tools, uninstalled equipment or abandoned or unused materials; or

22. **"Property damage"** means:

**A.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**B.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

23. **"Structural property damage"** means the collapse of or structural injury to any building or structure due to:

**A.** Grading of land, excavating, burrowing, filling or back-filling, tunneling, pile driving, cofferdam work or caisson work; or

**B.** Moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

24. **"Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to with this insurance applies are alleged.  "Suit" includes:

**A.** An arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

**B.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

25. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

26 **"Underground property damage hazard"** includes "underground property damage" and any resulting "property damage" to any other property at any time.

27. **"Underground property damage"** means "property damage" to wires, conduits, pipes, mains, sewers, tanks, tunnels, and similar property, and any apparatus used with them beneath the surface of the ground or water, caused by the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving.

**28. "Your product"**

    **A.** Means:

        **(1)** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** you;

            **(b)** others trading under your name; or

            **(c)** a person or organization whose business or assets you have acquired; and

        **(2)** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **B.** Includes:

        **(1)** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," and

        **(2)** the providing of or failure to provide warnings or instructions.

    **C.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**29. "Your work"**

    **A.** Means:

        **(1)** work or operations performed by you or on your behalf; and

        **(2)** materials, parts or equipment furnished in connection with such work or operations.

    **B.** Includes:

        **(1)** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** the providing of or failure to provide warnings or instructions.

**30. Signatory Clause**

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such provisions, stipulations, and agreements as may be added hereto.

In witness thereof, the Company has caused this Policy to be signed by its President and Secretary.

        PRESIDENT                   SECRETARY



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2168 (Ed.12 09)**

# STOP GAP EMPLOYERS' LIABILITY COVERAGE FORM

**LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| Employee Bodily Injury by Accident Each Accident | $ | 1,000,000 |
| Employee Bodily Injury by Disease Each Employee | $ | 1,000,000 |
| Aggregate Employee Bodily Injury by Disease Policy Limit | $ | 1,000,000 |

Premium $     INCLUDED

Various provisions of this Coverage Form restrict coverage. Read the entire form carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "Insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V - DEFINITIONS.

## SECTION I - STOP GAP COVERAGES

**1. Insuring Agreement**

**A.** We will pay those sums that the Insured  becomes legally obligated to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to any employee of the Insured who sustains an injury which arises out of and in the course of his employment, provided such employee is reported and declared by you under the Workers'  Compensation Fund of the state designated in the schedule. The "bodily injury" must take place in the "covered  territory." The employee's last day of exposure to conditions which cause or aggravate the "bodily injury" must occur   during the policy period.

We will have the right and duty to defend any "suit" seeking those damages, however, we will have no duty to defend any "suit" seeking damages for "bodily injury by accident" or "bodily injury by disease" to which this insurance does not apply. We may investigate and settle any claim or "suit" at our discretion. But:

**1.** the amount we will pay as damages is limited as described in **Section III - Limits Of Insurance;**

**2.** our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

**B.** Damages, because of "bodily injury" to your employees, include damages:

**1.** for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee that arises out of or in the course of the injured employee's employment by you;

**2.** for care and loss of services due to "bodily injury" that arises out of or in the course of the injured employee's employment by you.

3.  for consequential "bodily injury" to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of "bodily injury" that arises out of and in the course of the injured employee's employment by you; and

4.  because of "bodily injury" to your employee that arises out of and in the course of the employment, claimed against you in a capacity other than as employer.

## 2.  Exclusions

This insurance does not apply to:

**A.**  any assessment, penalty, or fine levied by any regulatory or inspection agency or authority;

"bodily injury" sustained or caused by any employee in violation of any law with the knowledge or acquiescence of the Insured;

**B.**  "bodily injury" to any member of the flying crew of any aircraft;

**C.**  "bodily injury" suffered by any employee whose remuneration has not been included in the total remuneration upon which premium for this insurance is based;

**D.**  "bodily injury" to a master or member of the crew of any vessel;

**E.**  "bodily injury" to any person sustained in the course of employment subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 931-942), or the Federal Employers Liability Act (45 USC Sections 51-60), or any other amendment to those laws or regulations promulgated under any of such acts;

**F.**  "bodily injury" to an employee when you are deprived of any defense or are subject to penalty because of your failure to secure your obligations under the workers' compensation law of any state shown in the Schedule or otherwise fail to comply with those laws;

**G.**  "bodily injury" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

**H.**  any obligation of the Insured under a workers' compensation or occupational disease law, disability benefits, or unemployment compensation law or any similar law;

**I.**  any injury sustained because of any act committed intentionally or at the direction of any Insured.

**J.**  damages arising out of personnel practices, acts or omissions including coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or termination of, or discrimination against any employee.

**K.**  punitive or exemplary damages because of "bodily injury" to an employee;

**L.**  "bodily injury" sustained due to an action by an Insured where injury to the employee was substantially certain.

**M.**  "bodily injury" arising after an Insured has failed to abate an unsafe work condition for which the Insured has received notice of an order to abate.

**N.**  any injury, damage or liability of any kind arising out of any criminal or malicious act or omission of any Insured.

**Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend.

**1.**   All expenses we incur.

**2.**   The cost of bonds to release attachments, only for bond amounts within the applicable Limit of Insurance. We do  not have to furnish these bonds.

**3.**   All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

**4.**   All costs taxed against the Insured in the "suit".

**5.**   Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.**   All interest on the full amount of any judgment that occurs after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limit of Insurance.


**SECTION II - WHO IS AN INSURED**

**1.**   If you are designated in the Declarations as:

**A.**   An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

**B.**   A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

**C.**   A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as their managers.

**D.**   An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

**E.**   A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees.

Any organization you newly acquire or form other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an Insured if there is no other similar insurance available to that organization. However:

**1.**   coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period whichever is earlier;

**2.**   coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**3.**   no person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

L. Meier Decl., Ex. 5, p. 54

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in this Coverage Form and the rules below fix the most we will pay regardless of the n number of:

    **A.** Insureds;

    **B.** claims made or "suits" brought; or

    **C.** persons or organizations making claims or bringing "suits."

**2.** "Bodily Injury by Accident." The limit shown for "Bodily Injury by Accident"- Each Accident is the most we will pay for all damages covered by this insurance because of "bodily injury" to one or more employees in any one accident.

    A disease is not Bodily Injury by Accident, unless it results directly from "Bodily Injury by Accident."

**3.** "Bodily Injury by Disease."The limit shown for "Bodily Injury by Disease" - Aggregate is the most we will pay for all damages covered by this insurance and arising out of "Bodily Injury by Disease," regardless of the number of employees who sustain "Bodily Injury by Disease." The limit shown for "Bodily Injury by Disease" Each Employee is the most we will pay for all damages because of "Bodily Injury by Disease" to any one employee.

    "Bodily Injury by Disease" does not include disease that results directly from a "Bodily Injury by Accident."

**4.** The limits of this Coverage Form apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - STOP GAP CONDITIONS

**1. Bankruptcy**.

    Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Form.

**2. Duties in the Event of Occurrence, Claim or Suit.**

    **A.** You must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** how, when and where the occurrence or offense took place;

        **(2)** the names and addresses of any injured persons and witnesses; and

        **(3)** the nature and location of any injury or damage arising out of the "occurrence" or offense.

    **B.** If a claim is made or "suit" is brought against any Insured, you must:

        **(1)** immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **C.** You and any other involved Insured must:

        **(1)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)**  authorize us to obtain records and other information;

    **(3)**  cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    **(4)**  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

  **D.**  No Insureds shall, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.  Legal Action Against Us.**

No person or organization has a right under this Coverage Form:

  **A.**  to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

  **B.**  to sue us on this Coverage Form unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured, but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the applicable Limit of  Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**4.  Premium Audit.**

  **A.**  We will compute all premiums for this Coverage Form in accordance with our rules and rates.

  **B.**  Premium shown in this Coverage Form as Advance Premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the Advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

  **C.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**5.  Representations.**

By accepting this Coverage Form, you agree:

  **A.**  the statements in the Declarations are accurate and complete;

  **B.**  those statements are based upon representations you made to us; and

  **C.**  we have issued this policy in reliance upon your representations.

**6.  Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Form to the first Named Insured, this insurance applies:

  **A.**  as if each Named Insured were the only Named Insured; and

  **B.**  separately to each Insured against whom claim is made or "suit" is brought.

**7. Transfer of Rights of Recovery Against Others to Us.**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**8. When We Do Not Renew.**

If we decide not to renew this Coverage Form, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**9. Other Insurance**

This insurance is excess over any other valid and collectible insurance.

## SECTION V – DEFINITIONS

**1.** Bodily injury means bodily injury by accident or disease, including death at any time resulting therefrom.

**2.** Bodily injury by accident means "bodily injury" by an unintended happening, and only such disease as results directly from a bodily injury by accident.

**3.** Bodily injury by disease means "bodily injury" as a result from a contraction of a disease.

**4.** Covered territory means:

    **A.** the United States of America, its territories or possessions; or

    **B.** Canada

provided the "bodily injury" arises out of and in the course of employment by any Insured either in operations in the State designated in the schedule or in operations necessary or incidental thereto, or sustained while temporarily outside the United States of America, its territories or possessions, or Canada arising out of and in the course of his employment by the Insured in connection with operations in the State designated in the schedule, but this insurance does not apply to any suit brought in or any judgment rendered by any court outside the United States of America, its territories or possessions, or Canada or to an action on such judgment wherever brought.

**5.** Suit means a civil proceeding in which damages to which this insurance applies are alleged. "Suit" includes:

    **A.** an arbitration proceeding in which such damages are claimed and to which the Insured must submit or submits with our consent; or

    **B.** any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured must submit or submits with our consent.

This Coverage Form is also subject to Policy Section V, General Exclusions and Policy Section VII., General Conditions.

L. Meier Decl., Ex. 5, p. 57

* O5 * 09/28/2016 * OMH 3133724-05

Great American Insurance Company

0624702



**Administrative Offices**
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 2391 (Ed. 01 01)**

# MARINE COMMERCIAL LIABILITY
# BLANKET ADDITIONAL INSURED ENDORSEMENT

We agree that this policy shall include as Additional Insureds any person or organization to whom the Named Insured has agreed by written contract to provide coverage, but only with respect to operations performed by or on behalf of the Named Insured and only with respect to an "occurrence":

1. Otherwise covered by this policy; and

2. That occurred subsequent to the making of such written agreement.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 58

Case 2:21-cv-01002-JCC   Document 18-5   Filed 09/09/21   Page 60 of 77

0624702

**Administrative Offices**
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 2392 (Ed. 01 01)**

# MARINE COMMERCIAL LIABILITY
# BLANKET WAIVER OF SUBROGATION ENDORSEMENT

We agree to waive any rights of subrogation to which we may be entitled if prior to an "occurrence," the Named Insured has agreed to such waiver in writing, but only to the extent required by said written agreement.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 59



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2400 (Ed. 01 01)**

# MARINE COMMERCIAL LIABILITY
# PREMIUM AND REPORTING ENDORSEMENT – FLAT PREMIUM

Section **VII** – **Marine Commercial Liability Coverage General Conditions,** paragraph **5. Premium Audit** deleted and replaced as follows:

**1.** **Policy Premium**

This policy is issued in consideration of the flat premium of **$SEE DEC PAGE.**

**2.** **Premium Due Date**

Premium is due and payable by the first Named Insured at the policy inception date.

**3.** **Records**

The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**4.** **Cancellation**

Section **VII** – **Marine Commercial Liability Coverage General Conditions,** paragraph **14. Cancellation -** clause **f.** is deleted.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 60



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2421 (Ed. 12 15)**

# MARINE COMMERCIAL LIABILITY
# LIMITED POLLUTION COVERAGE ENDORSEMENT
# MARITIME OPERATIONS ONLY

**1.  Coverage - Maritime Operations Only**

This Policy is extended to pay for "bodily injury" or "property damage" that you become legally obligated to pay as a result of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" from your Maritime Operations only.

With respect to coverage provided by this Limited Pollution Coverage Endorsement:

**A.**  Section **I** - Coverage **A.** exclusion **2.f.** does not apply to "bodily injury" or "property damage" that you become legally obligated to pay as a result of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of  "pollutants" from your Maritime Operations only.

**B.**  Section **I** - Coverage **A.** exclusion **2.g.** is deleted but only with respect to watercraft and coverage for Maritime Operations provided under this Limited Pollution Coverage Endorsement.

For purposes of this endorsement Maritime Operations means the ownership, maintenance, operation, use, repair, vessel construction, rebuilding or conversion, loading or unloading of owned, leased, rented or chartered watercraft, or other watercraft in your care, custody, or control solely in conjunction with the operations listed in the policy Declarations.

**2.  Exclusions and Limitations**

There is no coverage under this Limited Pollution Coverage Endorsement for any loss, damage, cost, liability or expense arising out of an actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" from any of the following:

**A.**  That is not sudden, accidental, unexpected and/or unintended;

**B.**  That did not become known to you within seventy-two (72) hours of the accident or occurrence;

**C.**  That is from an accident or occurrence that did not first commence on an identified specific date within the policy period;

**D.**  That is caused by willful misconduct by you or your agents or willful violation of any government statute, rule or regulation;

**E.**  That is caused by blowout and/or cratering;

**F.**  That is from sub-surface oil, gas or any other substance;

**G.**  That is from waste disposal sites or locations used in any way for handling, dumping, disposing, storing, processing or treatment, or transportation of any waste material substances;

**H.**  That is from below ground fuel storage tanks;

**I.**  That are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom you may be legally responsible.

GAI 2421 (Ed. 12/15)                              (Page 1 of 2)

L. Meier Decl., Ex. 5, p. 61

Case 2:21-cv-01002-JCC   Document 18-5   Filed 09/09/21   Page 63 of 77

3.  **Fines, Penalties and Punitive Damages Exclusion**

In no case will this Limited Pollution Coverage Endorsement cover fines, penalties, exemplary or punitive damages.

4.  **Oil Pollution Act of 1990 Limitation**

This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal, State, or Local law.  Further, it is a condition of this insurance that it shall not be submitted to the United States Coast Guard or any other Federal, State, or Local agency as evidence of financial responsibility.  We do not consent to being a guarantor.

5.  **Notice of Pollution Event**

You shall notify us by telephone or facsimile immediately, or as soon as practical, in the event of an actual or potential pollution accident or occurrence.

No coverage under this endorsement applies if you have not notified us of an actual or potential pollution accident or occurrence within 30 days of your knowledge of the event.

6.  **Excess Pollution Coverage Only**

This pollution coverage is excess over any other pollution insurance, whether primary, excess, contingent or on any other basis.

7.  **Limit**

Our limit of liability under this endorsement is listed in the Declarations and described in the Limits of Insurance, Section **III** of this policy.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 62



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 2480 (Ed. 01 01)**

# MARINE COMMERCIAL LIABILITY COVERAGE
# HIRED AUTO AND NON-OWNED AUTO LIABILITY ENDORSEMENT

**A.** Insurance is provided only with respect to those coverages for which a specific premium charge is shown on the Declarations Page.

**1. Hired Auto Liability**

The insurance provided under paragraph **1.a. Marine Commercial Liability Coverage** in **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-Owned Auto Liability**

The insurance provided under paragraph **1.a. Marine Commercial Liability Coverage** in **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions, under paragraph **2.** in **SECTION I – COVERAGE A,** other than Exclusions **a., b., d., f.,** and **j.** and Exclusion **1.** in **SECTION V.** are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** an "employee" of the Insured arising out of and in the course of;

**(a)** employment by the Insured; or

**(b)** performing duties related to the conduct of the Insured's business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(a)** whether the Insured may be liable as an employer or in any other capacity; and

**(b)** to any obligation to share damages with or repay someone else who must pay damages because of injury.

But, this exclusion does not apply to liability assumed by the Insured under an "insured contract" or to "bodily injury" arising out of and in the course of domestic employment by the Insured, unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**b.** "Property damage" to:

**(1)** property owned or being transported by, or rented or loaned to the Insured; or

**(2)** property in the care, custody or control of the Insured.

L. Meier Decl., Ex. 5, p. 63

2. Paragraph **1. Who is an Insured** in **SECTION II**, is replaced by the following:

Each of the following is an Insured under this endorsement to the extent set forth below:

**a.** you;

**b.** any other person using a "hired auto" with your permission;

**c.** for a "non-owned auto," any partner or "executive officer" or yours, but only while such "non-owned auto" is being used in your business; and

**d.** any other person or organization, but only with respect to their liability because of acts or omissions of an Insured under **a., b.,** or **c.** above.

None of the following is an Insured:

**(1)** any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury," or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**(2)** any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**(3)** any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

**(4)** the owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

**(5)** any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** The following additional definitions apply:

1. **"Auto Business"** means the business or occupation of selling, repairing, servicing, storing or parking "autos."

2. **"Hired Auto"** means only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

3. **"Non-Owned Auto"** means only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 64



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 2020 (Ed. 01 05)**

**Policy:** OMH 3133724 05

# BUSINESSPRO EMPLOYEE BENEFITS LIABILITY COVERAGE PART
## DECLARATIONS PAGE

NAMED INSURED: BEAR ENTERPRISES, LLC

POLICY #: OMH 3133724
POLICY EFFECTIVE DATE: 09/28/2016          POLICY EXPIRATION DATE: 09/28/2017

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Aggregate Limit | $ | 1,000,000 |
| Each Claim Limit | $ | 1,000,000 |
| Deductible | $ | 2,500 |

**DESCRIPTION OF BUSINESS:**

SEE OCEAN MARINE COVERAGE LEVEL DECLARATIONS PAGE - GAI 2417

**FORM OF BUSINESS:**  Organization (other than Partnership or Joint Venture)

                                                        **Total Advance Premium**  $      INCLUDED

**FORMS AND ENDORSEMENTS** applicable to this Coverage Part and made a part of this Policy at the time of issue
are listed on the attached Forms and Endorsements Schedule, GAI 22 97 (01/01).

L. Meier Decl., Ex. 5, p. 65



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 2021 (Ed. 01 05)

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
# EXCLUDING FIDUCIARY LIABILITY

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI - DEFINITIONS.**

## SECTION I - EMPLOYEE BENEFITS COVERAGES

**1. Insuring Agreement**

   **a.** We will pay those sums that the Insured becomes legally obligated to pay as damages sustained by an employee, former employee, prospective employee or the beneficiaries or legal representatives thereof and caused by any "negligent act, error or omission" of the Insured, or any other person for whose acts you are legally liable in the "administration" of your "Employee Benefit Program." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTAL PAYMENTS.**

   This insurance applies to any "negligent act, error or omission" which occurs in the "coverage territory" and during the policy period.

   We will have the right and duty to defend any suit seeking those damages. But:

     **(1)** the amount we pay for damages is limited as described in **Section III - Limits of Insurance.**

     **(2)** we may at our discretion, investigate any "negligent act, error or omission" and settle any claim or "suit" that may result; and

     **(3)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Coverage Part.

**2. Exclusions**

   This insurance does not apply to:

   **a.** damages arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any Insured;

   **b.** "bodily injury" or "property damage" or "personal and advertising injury";

   **c.** damages arising out of failure of performance of contract by any Insured;

   **d.** damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

**e.** any claim or "suit" based upon:

    **(1)** failure of any investment to perform as represented by any Insured, or

    **(2)** advice given to any person to participate or not to participate in any plan included in the "employee benefit program";

    **(3)** the investment or non-investment of funds.

**f.** damages arising out of your failure to comply with the mandatory provisions of any law concerning workers' compensation, unemployment insurance, social security or disability benefits; or

**g.** damages for which the Insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance.  We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**4.** All costs taxed against the Insured in the "suit."

**5.** Prejudgment interest awarded against the Insured on that part of the judgment we pay.  If we made an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an Insured.  Your members, your partners and their spouses are also Insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an Insured.  Your members are also Insureds, but only with respect to the conduct of your business.  Your managers are Insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture, or limited liability company, you are an Insured.  Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also Insureds, but only with respect to their liability as stockholders.

    **e.** Your "employees" provided they are authorized to act in the administration of your "Employee Benefit Program."

GAI 2021 (ED. 01/05)                (Page 2 of 7)

**f.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

**(1)** coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** coverage does not apply to negligent acts, errors or omissions that occurred before you acquired or formed the organization:

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** claims made or "suits" brought; or

**c.** persons or organizations making claims or bringing "suits."

**2.** The limits of liability shown in the Declarations applicable to Each Claim is the most we will pay for all damages arising out of any covered claim.

The Limit of Liability shown in the Declarations as Aggregate is subject to the above provision respecting Each Claim, the most we will pay for all losses.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEDUCTIBLE

**1.** Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the deductible amount stated in the Declarations.  The Limits of Insurance applicable to each claim for such coverage will be reduced by the amount of such deductible amount.

**2.** The terms of this insurance, including those with respect to:

**(a)** our right and duty to defend any "suits" seeking those damages; and

**(b)** your duties in the event of a negligent act, claim or "suit";

apply irrespective of the application of the deductible amount.

**3.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

L. Meier Decl., Ex. 5, p. 68

## SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the Insured will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of a Claim or "Suit"**

   a. The Insured must see to it that we are notified as soon as practicable of any "negligent act, error or omission" which may result in a claim.  To the extent possible, notice should include:

   (1) how, when and where the "negligent act, error or omission" took place;

   (2) the names and addresses of any injured persons and witnesses; and

   (3) the nature of any injury or damage arising out of the "negligent act, error or omission."

   b. If a claim is received by an Insured, you must:

   (1) immediately record the specifics of the claim and the date received; and

   (2) notify us as soon as practicable.

   c. You and any other involved Insured must:

   (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit;"

   (2) authorize us to obtain records and other information;

   (3) cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

   (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

   d. No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. to join us as a party or bring us into a "suit" asking for damages from an Insured; or

   b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial, but we will not be liable for damages that are not due under the terms of this Coverage Part or that are in excess of the Limits of Insurance.  An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal agent.

4. **Other Insurance**

   If other valid and collectible insurance is available to the Insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

(a) **Primary Insurance**

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **b.** below.

(b) **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5.  Premium Audit**

   **a.**  We will compute all premiums for this endorsement in accordance with our rules and rates.

   **b.**  Premium shown in this endorsement as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period.

       Audit premiums are due and payable on notice to the first Named Insured.  If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.  Representations**

By accepting this policy, you agree:

   **a.**  the statements in the Declarations are accurate and complete;

   **b.**  those statements are based upon representations you made to us; and

   **c.**  we have issued this policy in reliance upon your representations.

**7.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

   **a.**  as if each Named Insured were the only Named Insured; and

   **b.**  separately to each Insured against whom claim is made or "suit" is brought.

**8.  Transfer of Rights of Recovery Against Others To Us**

If the Insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us.  The Insured must do nothing after loss to impair them.  At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI - DEFINITIONS

1. **"Administration"** means:

   a. giving counsel to employees with respect to the "Employee Benefit Programs";

   b. interpreting the "Employee Benefit Programs";

   c. handling of employee records in connection with the "Employee Benefit Programs";

   d. effecting enrollment, termination or cancellation of employees under the "Employee Benefit Programs"; provided all such acts are authorized by you.

2. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

   a. the United Sates of America (including its territories and possessions), Puerto Rico and Canada.

5. **"Employee"** means your officers, partners and employees whether actively employed, disabled or retired.

6. **"Employee Benefit Program"** means the following plans:

   a. group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

   b. unemployment insurance, social security benefits, workers' compensation and disability benefits;

   c. any other similar plan designated in the Declarations or added thereto by endorsement.

7. **"Negligent act, error or omission"** means the failure to execute a required action, or a mistaken action committed by the administration of the Insured's employee benefit program to said program.

8. **"Personal and Advertising Injury,"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of the its owner landlord or lessor;

   d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;

GAI 2021 (ED. 01/05)                                             (Page 6 of 7)

e.   oral or written publication or material that violates a person's right of privacy.

f.   the use of another's advertising idea in your "advertisement";

g.   infringing upon another's copyright, trade dress or slogan in your "advertisement."

9.   **"Profit sharing plans"** means only such plans that are equally available to all full time employees.

10.  **"Property damage"** means:

a.   physical injury to tangible property, including all resulting loss of use of that property; or

b.   loss of use of tangible property that is not physically injured.

11.  "Stock subscription plans" mean only such plans that are equally available to all full time employees.

12.  **"Suit"** means a civil proceeding in which damage because of a "wrongful act" to which this insurance applies are alleged.  "Suit" includes:

a.   an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does with our consent; or

b.   any other alternative dispute resolution proceeding in which the Insured submits with our consent.

**All other terms and conditions of this policy remain unchanged.**

L. Meier Decl., Ex. 5, p. 72





Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 2427 (Ed. 09 03)**

# MISCELLANEOUS PROPERTY FLOATER

1.   **PROPERTY INSURED:** In consideration of the premium charged: $ 1,000.00, the Company insures the following scheduled property of the insured, or the property of others for which the Insured is liable, within the forty-eight (48) contiguous states of the United States of America, the District of Columbia and the Dominion of Canada:

| Item No. | Description | Amount of Insurance |
|---|---|---|
| 1 | PER SCHEDULE | $        100,000 |

2.   **PROPERTY EXCLUDED:**

  a.   aircraft, watercraft (including motors, equipment, and accessories), automobiles, trucks, trailers, semi-trailers and any other vehicles (including parts and accessories therefore) which are both designed and licensed for highway use;

  b.   plans, blueprints, mechanical drawings, designs, or specifications;

  c.   property while loaned, leased or rented to others, or possession of which has been transferred to others pursuant to any form of agreement of sale;

  d.   buildings, sheds, or any other real property; cement, sand, gravel, earthen fill, building materials or supplies of any kind;

  e.   property while airborne;

  f.   property while in cofferdams or while being used in strip or underground mining, tunneling, or similar operations, unless specifically endorsed hereon;

  g.   office furniture, fixtures and equipment; spare or repair parts;

3.   **PERILS INSURED:**

  This policy insures against all risks of direct physical loss of or damage to the property scheduled herein, from any external cause, except as provided elsewhere in this policy.

**4. PERILS EXCLUDED:**

  This Policy does not insure against:

  a.   loss or damage occasioned by the weight of the load exceeding the lifting capacity of any machine;

  b.   wear, tear, gradual deterioration, inherent vice, latent defect, insects, vermin, dampness of atmosphere, ice, freezing, extremes of temperatures, mechanical or electrical breakdown or failure, unless such damage is the result of other peril insured by this policy;

  c.   loss or damage caused by misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the assured or other party of interest, his or their employees or agents or any persons to whom the property may be entrusted (carriers for hire excepted);

GAI 2427 (Ed. 09/03)                    (Page 1 of 4)

L. Meier Decl., Ex. 5, p. 73

**d.** unexplained loss, mysterious disappearance, or shortage disclosed upon taking inventory;

**e.** loss or damage caused by delay, loss of market, loss of use, or interruption of business;

**f.** loss or damage by theft from an unattended vehicle unless said vehicle is equipped with a fully enclosed body or compartment, and the loss be direct result of violent forcible entry (of which there shall be visible evidence) from a fully enclosed body, the doors and windows of which shall have been securely locked, or from a compartment which shall have been securely locked;

**g.** any process of refinishing, renovating or repairing;

**h.** water, meaning:

    **1.** flood, surface water, waves, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

    **2.** mudslide or mudflow;

    **3.** water that backs up from a sewer or drain;

    **4.** water under the ground surface pressing on, or flowing or seeping through:

        **a.** foundations, walls, floors, or paved surfaces;

        **b.** basements, whether paved or not; or

        **c.** doors, windows or other openings.

**i.** loss or damage caused by or resulting from:

    **1.** hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack,

        **a.** by any government or sovereign power (de jure or defacto), or by any authority maintaining or using military, naval or air forces;

        **b.** by military, naval or air forces; or

        **c.** by an agent of any such government, power authority of forces;

    **2.** any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

    **3.** insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of government or public authority, or risks of contraband or illegal transportation or trade;

**j.** Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear radiation or radioactive contamination is insured against by this Policy.

## 5.   LIMITS OF LIABILITY

The Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs with deduction for depreciation or what it would cost to repair or replace with like kind and quality, whichever is less, but in no event shall the Company be liable for more than the amount of insurance specified above.

The Company shall be liable for no greater proportion thereof than the amount hereby insured bears to the actual cash value of property described herein at the time when such loss shall happen. However, the maximum liability of the Company resulting from any one accident or loss shall not exceed the amount shown above.

**6. DEDUCTIBLE**

Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim, there shall be deducted the sum of $ 1,000.

**GENERAL CONDITIONS**

**7. Misrepresentation and Fraud:** This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

**8. Notice of loss:** The Insured shall as soon as practicable report in writing to the Company or its agent, every loss, damage or occurrence which may give rise to a claim under this policy and shall so file with this Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

**9. Examination under oath:** The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act or the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

**10. Settlement of loss:** All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

**11. Subrogation:** In the event of any accident, loss, damage or injury for which claim may be made under this policy, the Insured agrees to subrogate to this Company all rights which the Insured may have against any other person or entity with respect to said accident, loss, or occurrence. In case of any agreement or act, past or future, by the Insured, whereby any right of recovery of the Insured, against any person or entity, is released or lost, which would on payment of loss by the Company, belong to the Company but for such agreement or act, this insurance shall be vitiated to the extent that this Company's right of subrogation has been impaired thereby; provided, however that the right of this Company to retain or recover any premium paid or due hereunder shall not be affected. The cost and expense of prosecuting any claim, shall have an interest by subrogation or otherwise, shall be divided between the Insured and this Company proportionately to the amount which they would be entitled to receive respectively if such prosecution should be successful. It is agreed that this Company waives any right of subrogation against any subsidiary, affiliated or inter-related Company of the Insured, excepting to the extent that any such Company is insured against the liability asserted.

**12. Loss Clause:** The full annual premium shall be considered earned in the event of payment of a total loss.

**13. Protection of Property:** In the case of loss, it shall be necessary for the Insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.

**14. Suit:** No, suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months after discover by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued, such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

**15. Appraisal:** If the Insured and Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court or record in the State in which the appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and failing the agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by an act relating to appraisal.

**16. Transfer of Interest:** All coverage under this policy shall terminate upon the sale, transfer, assignment or pledge of the property insured unless the prior written consent of the Company has been obtained.

**17. Conformity to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

**18. Cancellation:** This policy may be cancelled by either party by giving fifteen (15) days notice in writing to the other party. Earned premium to be calculated in accordance with the terms and conditions of this policy.

L. Meier Decl., Ex. 5, p. 76