THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREAT AMERICAN INSURANCE COMPANY,

Plaintiff,

v.

RODGER MAY,

Defendant.

CASE NO. C21-1002-JCC

ORDER

This matter comes before the Court on Plaintiff Great American Insurance Company's motion for partial summary judgment (Dkt. No. 16) and Defendant Rodger May's motion for leave to amend his Answer (Dkt. No. 45.) Having thoroughly considered the briefing and relevant record, and having taken oral argument under advisement, the Court hereby GRANTS Great American's motion (Dkt. No. 16) and DENIES Mr. May's motion (Dkt. No. 45) for the reasons explained herein.

## I. BACKGROUND

In the case before this Court, Great American seeks a declaratory judgment that it has no duty to defend or indemnify its insureds in a suit brought by Rodger May. (*See generally* Dkt.

No. 1.)[1] In that suit, Mr. May sued MK Salvage Venture LLC ("MKSV"), Bear Enterprises LLC, and Mr. Kuttel (who holds a controlling interest in Bear Enterprises LLC). *See Rodger May v. MK Salvage Venture LLC*, King County Superior Court, Case No. 19-2-10613-1 (2019).

According to Mr. May's complaint, he and Mr. Kuttel formed MKSV in 2012 to salvage gold they believed to be contained in the *S/S Islander*, which sunk off the coast of Alaska in 1901. (Dkt. No. 18-2 at 5.) At the time, Ocean Mar Inc. ("OMI") held the *S/S Islander's* salvage rights. (*Id.*) So MKSV entered into an agreement with OMI to fund and operate the endeavor in exchange for an interest in the salvage proceeds. (*Id.* at 6; *see also id.* at 18 (Financing and Salvage Management Agreement between OMI and MKSV)[2].) In addition, MKSV received a security interest in the intangible property generated by its efforts, which, according to the agreement, "includ[ed], without limitation, computer data, photographs, videos, imaging, readings, logs, [and] journals."[3] (*Id.*) That property "was to be downloaded to a media disc on a daily basis" and held in escrow until such time as MKSV recouped its investment. (*Id.*) By 2016, though, despite repeated efforts, MKSV failed to salvage sufficient gold. (*Id.* at 6.) Mr. May and Mr. Kuttel elected to dissolve the entity. (*Id.* at 6–7.)

As part of the wind up process, the parties initially agreed that Mr. May was to receive, amongst other things, MKSV's interest in the intangible property. (*Id.* at 7–9.) By this time, Bear Enterprises held the media containing this information. (*Id.* at 7.) Mr. May contended that, despite their agreement otherwise, Bear refused to relinquish the property. Specifically, he alleged that "Bear Enterprises and/or its member Peter Kuttel[] wrongfully, improperly and without authorization continued to retain possession and/or control of the Intellectual Property" despite Mr.

[1] Insureds later assigned their interests in the subject Great American policy to Mr. May as part of a settlement of Mr. May's suit; as a result, Mr. May is the lone Defendant in the instant action. (*See* Dkt. Nos. 34 at 1, 39 at 9–10.)

[2] Mr. May's King County Superior Court complaint makes frequent reference to and includes this agreement as an exhibit to his complaint. (*See, e.g.*, Dkt. No. 18-2 at 6, 7, 15–25.)

[3] King County Superior Court Judge Sandra Widlan described this property in her order approving a settlement of Mr. May's suit as a "treasure map." (Dkt. No. 39 at 12.)

May's "demand[] that [they] relinquish possession." (*Id.* at 9.) Mr. May described this in his King County Superior Court complaint as a "wrongful deprivation of May's property and contractual rights." (*Id.*)

Mr. May sought a declaratory judgment that he was "the legal and/or equitable owner" of the "[i]ntellectual property," an injunction conveying the property to him, and damages resulting from the deprivation.[4] (*Id.* at 10–13.) Mr. Kuttel, Bear Enterprises, and MKSV, all of whom were insured by Great American at the time of MKSV's dissolution, tendered their defense to Great American, who issued a denial in November 2019. (*See* Dkt. No. 18-3.) In its denial letter, Great American contended that Coverage A under its policy did not apply because (i) the property described in Mr. May's complaint was not "tangible property" covered under the policy and (ii) any harm to covered property, according to the complaint, did not occur through the requisite "occurrence." (*See id.* at 10.) It further noted that Coverage B did not apply because none of the listed triggering "offenses" were described in Mr. May's complaint. (*Id.*) It is undisputed that the insureds did not appeal or otherwise challenge this determination. (*See generally* Dkt. Nos. 35, 37.)

Ultimately, the parties settled Mr. May's suit. He received the intangible property and a $7.5 million covenant judgment. (Dkt. No. 39 at 18.) The judge found that Mr. May lost out on the opportunity to timely exercise his salvage rights with OMI who, in turn, lost its own salvage rights to Tyche High Seas Capital Corporation, an unrelated salvage company. (*Id.* at 8.) As part of the settlement, Mr. May also received the insureds' rights against Great American relating to its duties to defend and/or indemnify Mr. Kuttel's claims. (*Id.* at 9–10.)

As it relates to the suit before this Court, Great American now moves for partial summary judgment on its duty to defend the insureds in Mr. May's suit (which ironically is now a claim held by Mr. May). (Dkt. No. 16.) Great American argues, as it did in its letter denying the insureds tender, that there could not conceivably be coverage for the events described in Mr.

---

[4] Mr. May also made a derivative claim on MKSV's behalf, as an MKSV member. (Dkt. No. 18-2 at 13.)

May's complaint, as it failed to allege (i) affected tangible property, (ii) a triggering occurrence, or (iii) a covered offense. (*See* Dkt. No. 16 at 7–12.) Great American further contends that, even if there conceivably was coverage, policy exclusions would apply. (*Id.* at 12–14.) Because, as discussed below, Great American demonstrates as a matter of law there is no duty to defend based on the coverage provided, the Court need not consider the import of the policy exclusions.

Separately, Mr. May moves for leave to amend his Answer to add allegations supporting his counterclaims (Dkt. No. 45). This is based on Great American's assertion that the policy at issue is not one affording "ocean marine" coverage under Washington State Law. (*See* Dkt. No. 42 at 2.) Mr. May alleges that, if this is so, Great American mischaracterized the policy when it sold it to the insureds, thereby violating Washington insurance code and regulations. (Dkt. No. 45 at 1.) In opposition, Great American argues that Mr. May lacks standing to assert such claims. (Dkt. No. 47 at 7–9.) As further described below, the Court agrees with Great American.

## II. DISCUSSION

### A. Great American's Motion for Partial Summary Judgment

#### 1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. It is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to

carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly supports its motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

2. Choice of Law

Great American's policy has a choice of law provision that, if enforceable, could require the application of New York law to this dispute. (*See* Dkt. No. 18-5 at 9.) That being said, it is uncontroverted that the policy was delivered in Washington. (*See generally* Dkt. Nos. 37, 43.) And such a provision is not enforceable under Washington law. *See* RCW 48.18.200. Mr. May suggests that this prohibition does not apply to "Ocean Marine" policies. (Dkt. No. 41 at 1.) This is true. *See* RCW 48.18.010.

But the policy is not an "Ocean Marine" policy, at least as defined narrowly under Washington law. *See* RCW 48.11.105 (containing no express inclusion for liability policies); (Dkt. No. 47 at 7 n.3) (stating that the marine commercial liability policy contains exclusions for "watercraft" and "care, custody, and control of property," the traditional subjects of ocean marine insurance policies). Moreover, while he provided oral argument suggesting otherwise, Mr. May's briefing seems to tacitly concede this issue. (*See* Dkt. Nos. 45, 48.) Regardless, the Court FINDS that, based on the import of RCW 48.18.010, Washington law must apply in this instance.[5]

---

[5] Although the Court notes that the conclusions reached herein would be unchanged even if New York law controlled, as New York and Washington have sufficiently similar rules regarding how and when a duty to defend applies. *Compare Euchner-USA, Inc. v. Hartford Cas.*

3. Duty to Defend

An insurer's "duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (internal quotations omitted); *see Robbins v. Mason Cnty. Title Ins. Co.*, 462 P.3d 430, 435 (Wash. 2020). "The party seeking to establish coverage bears the initial burden of proving coverage under the policy has been triggered," while "[t]he insurer bears the burden of establishing an exclusion to coverage." *Pleasant v. Regence BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983 P.2d 707, 709 (Wash. Ct. App. 1999)).

Ordinarily, when determining if it has a duty to defend, an insurer must look to the "eight cor[n]ers" of the policy and the complaint against the insured. *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017). If neither document raises an issue of fact or law that could conceivably result in coverage, then the insurer need not defend. *Id.* But "if there is any reasonable interpretation of the facts or law that could result in coverage, the insurer must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). And if the facts in the complaint are ambiguous, or if they conflict with facts known to or readily ascertainable by the insurer, then the insurer must investigate those facts using extrinsic evidence available at the time to determine if the insured is conceivably covered. *See Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). This extrinsic evidence may be used to confirm, but not disprove, a duty to defend. *Id.*

*a. Coverage A*

Coverage A applies to "property damage" caused by an "occurrence." (Dkt. No. 18-5 at 21.) Mr. May contends that the property at issue, which his complaint described on 35 occasions

---

*Ins. Co.*, 754 F.3d 136 (2d Cir. 2014), *with Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007).

as "intellectual property," (*see, e.g.*, Dkt. No. 18-2 at 6–14), at least conceivably, included tangible property "in the form of printed charts, maps and volumes of notations." (Dkt. No. 37 at 15.) This argument misses the mark.

According to the policy, "[p]roperty damage" is "[p]hysical injury to tangible property." (Dkt. No. 18-5 at 51.) "[E]lectronic data is not tangible property." (*Id.*) In attempting to argue otherwise, Mr. May relies on extrinsic evidence unavailable to Great American at the time of the insureds' tender. (*See* Dkt. Nos. 38 at 2–3 (Mr. May's declaration), 39 at 7 (Judge Widlan's order).) This is not permissible. Moreover, Mr. May's complaint and the attached exhibits indicate, in no uncertain terms, that his injuries flowed from the loss of access to the *data* describing the *S/S Islander's* location and contents—not the *tangible vessel* the data may have been stored in. (*See generally* Dkt. No. 18-2 at 4–41). And data is, by definition, intangible property. *See* Property, BLACK'S LAW DICTIONARY (11th ed. 2019).

Mr. May also contends that Mr. Kuttel's refusal to remit the intangible property, the gravamen of his complaint, was a qualifying "occurrence." (Dkt. No. 37 at 17–22.) This argument is also unavailing. The policy defines an "occurrence" as "an accident." (Dkt. No. 18-5 at 50.) Mr. May's complaint indicated that he "demanded that Bear Enterprises and/or Kuttel relinquish possession of the Intellectual Property so that May . . . could utilize it in performance of additional salvage efforts." (Dkt. No. 18-2 at 9.) Nevertheless, "Bear Enterprises and Kuttel have refused." (*Id.*)

For the offending acts to have been an "accident," "the result must be unforeseen, involuntary, unexpected and unusual." *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 509 (Wash. 1992) (citing *Detweiler v. J.C. Penney Cas. Ins. Co.*, 751 P.2d 282, 284 (Wash. 1988)). Even liberally construed, the complaint indicates in no uncertain terms that Bear Enterprises and Kuttel were aware of the likely consequences of their failure to turn over the intellectual property to Mr. May, yet they willfully elected not to.

Therefore, as a matter of law, Great American has no duty to defend based on Coverage

A.

*b. Coverage B*

Coverage B applies to certain offending conduct by the insured, including "[o]ral or written publication of material, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Dkt. No. 18-5 at 50 (cleaned up).) Mr. May contends that his complaint conceivably describes this conduct. (Dkt. No. 37 at 24.) But there is nothing in his complaint that, again, even liberally construed, could reach this mark. (*See generally* Dkt. No. 18-2 at 4–17.) Therefore, as a matter of law, Great American has no duty to defend based on Coverage B.

**B. Mr. May's Motion to Amend**

Separately, Mr. May seeks leave to amend his Answer to assert that Great American misrepresented its offering as an "ocean marine" policy and perpetuated this misrepresentation as part of its claims handling process, thus affecting the underlying rights under this policy. (Dkt. No. 45-1 at 18–25.)

Motions to amend an answer are analyzed under the liberal amendment standard of Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P. 13, Advisory Committee Notes 2009 Amendments ("An amendment to add a counterclaim will be governed by Rule 15."). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). An amendment is considered futile if no amendment would allow the complaint to withstand dismissal as a matter of law. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). As standing to sue is a "threshold requirement in every federal action," and standing deficiencies cannot be cured, lack of standing renders granting leave to amend futile. *Sicom Systems, Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971, 975 (9th Cir. 2005).

Here, whether Mr. May has standing to assert counterclaims based on certain conduct depends on whether those claims are "within the scope of the assignment." *DB Healthcare, LLC*

*v. Blue Cross Shield of Arizona, Inc.*, 852 F.3d 868, 576 (9th Cir. 2017). This, in turn, "depends upon the intent of the parties." *Id.* (quoting *Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975).

While counterclaims based on Mr. May's proposed additional allegations could conceivably have been appropriately raised by Mr. Kuttel, nothing in the record suggests that he intended to assign his rights on such claims to Mr. May. According to their settlement agreement, the rights so assigned relate solely to "Great American's duties to [] to defend and/or indemnify May's claims and/or this action . . ." (Dkt. No. 15-1 at 9.) This has nothing to do with contract formation issues. Mr. May's assertion that this language is broad enough to include such claims (Dkt. No. 48 at 5) is unpersuasive. The express language of the settlement agreement indicates the parties' clear intention to limit these rights only to those related to Great American's duty to defend and/or indemnify. (*See* Dkt. No. 15-1 at 9.)

Moreover, the labeling of the policy as "ocean marine" was irrelevant to Great American's coverage denial. It denied coverage based on a lack of tangible property, "occurrence," and "offenses." (*See* Dkt. No. 1-2 at 9–10.) Therefore, Great American's alleged mischaracterization of its commercial liability policy as an "ocean marine" one would primarily implicate the choice of law provision, which as noted above, *see* supra Part II.A.2. n.5, is inconsequential to the outcome of this case. Put simply, Mr. May's newly proposed allegations are unrelated to Great American's duty to defend/indemnify. As such, Mr. May lacks standing to raise the resulting counterclaims.

Accordingly, the Court FINDS that allowing Mr. May to amend his complaint to add such allegations would be futile.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Great American's motion for summary judgment (Dkt. No. 16) and DENIES Mr. May's motion to amend. (Dkt. No. 45.)

DATED this 7th day of September 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE